517 So.2d 386 (1987)
The SUCCESSION OF Anthony HERRLE.
No. 87-CA-338.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
Writ Denied February 5, 1988.
*387 Pat M. Franz, Metairie, for plaintiff/appellant.
Ernest E. Barrow, II, Grant & Barrow, Gretna, for defendant/appellee.
Before BOWES, WICKER and GOTHARD, JJ.
BOWES, Judge.
The present appeal was taken from a judgment of the district court denying plaintiff's request to reduce attorney's fees previously paid in the succession. We affirm.
In 1977, Anthony Herrle executed a statutory will in which he designated his wife, Margaret Herrle, to be executrix for the estate and named Andrew Weir, the attorney who prepared the will, as attorney for the executrix. Mr. Herrle died in February, 1979, and, shortly thereafter, probate proceedings were begun and the succession placed under administration. A number of pleadings were filed, one of which was a "First and Final Tableau of Distribution," filed on May 23, 1980, which sought court authority to pay the debts listed thereon. One of the debts listed on the tableau was for Mr. Weir's attorney fees in the amount of $28,622.76. That amount represented, or was computed, as a flat 5% of the gross community estate. No opposition to the proposed distribution was filed, and, on July 24, 1980, the tableau filed by the executrix was homologated. No appeals from the judgment have ever been taken. After August, 1981, no further pleadings were filed into the record, although the succession remained open until April, 1985, by which time the sons of the deceased had retained other counsel. In August, 1985, these sons filed a "Rule To Traverse Amount of Attorney's Fee," to which rule the executrix filed exceptions of res judicata and prescription. These exceptions were denied. In February 1986, a pleading styled "Concurrence of Executrix" was filed in which Mrs. Herrle (then Mrs. Orgeron) "concurred" with the rule to traverse. Subsequently, in May, 1986, Mrs. Orgeron, as executrix, filed a petition substantially along the same lines as the earlier rule to traverse taken by the sons. Mr. Weir, individually, filed an exception of res judicata, as well as an answer and reconventional demand, through his attorney, and, in this posture, the case came to trial.
At issue in the trial was plaintiff's assertion that the fee collected by Mr. Weir was excessive in light of the standards enunciated in Disciplinary Rule 2-106 of the Code of Professional Responsibility. After trial on the merits, the court found in favor of the defendant, dismissing plaintiff's petition.
On appeal, plaintiff urges that the trial court erred in imposing the burden of proof as to unreasonableness of legal fees upon the client plaintiff, and also in finding that the fee collected was not clearly excessive.
At the outset we note that the case is in a rather peculiar procedural position as presented to this court. We have before us a judgment homologating a tableau of distribution made more than five years before the first "Rule to Traverse" was filed. Additionally, the case as finally heard involved a petition filed by the executrix to challenge her own tableau of distribution. Louisiana Code of Civil Procedure Article *388 3244[1] states that inclusion in the tableau of the claim of a creditor of the succession creates a prima facie presumption of the validity of the claim, and the burden of proving the invalidity thereof is upon the person opposing itin the present case, the very person acknowledging the claim, the executrix herself.
To add to the confusion, a judgment homologating a tableau of distribution is a final judgment subject to a suspensive appeal under C.C.P. Art. 3307-08. As previously stated, no appeal has ever been taken from that homologation. Finally, there is a line of jurisprudence holding that a judgment approving a provisional account is res judicata as to issues passed upon and determined by that judgment. Succession of Nock, 119 So.2d 476 (La.1960) and the cases cited therein; Succession of Menendez, 155 So.2d 212 (La.App. 4 Cir.1963). Succession of Allen, 49 La.Ann. 1096, 22 So. 319 (La.1897), cited by the Nock court, held more specifically that a partial tableau of distribution previously homologated was final and conclusive against heirs, legatees, and creditors and operated as a bar (res judicata).
We conclude, therefore, from the trial court's judgment and reasons that the exception of res judicata was implicitly overruled and appellee does not urge either the exception or other issues by answer or cross appeal. Because these questions are not properly before this court, we cannot proceed to address them further, and have undertaken them only in connection with the issue of burden of proof.
Ordinarily, in cases involving a question of the reasonableness of attorney's fees, it is the attorney seeking fees who brings the action and has the burden of proving reasonableness. See, e.g., Becnel v. Arnouville, 425 So.2d 972 (La.App. 5 Cir.1983) in which the attorney sued his former clients for legal fees. We held there that the burden of proving the reasonableness of the fees charged is the obligation of the attorney. However, it is an elementary rule of law that one who asserts a fact must carry the burden of proof of that fact by a reasonable preponderance of the evidence. Meyer v. State, Dept. of Public Safety License Control and Driver Improvement Division, 312 So.2d 289 (La. 1975).
The executrix is the plaintiff in the present action which seeks to challenge attorney's fees she previously paid, without protest, in accordance with a final judgment homologating (and thus judicially approving) her tableau of distribution which is now over five years old and upon which the delay for appeal has lapsed. Accordingly, the debts listed therein, including the attorney's fees, are presumptively valid and the burden of proving invalidity is clearly upon the opposing party. Therefore, we conclude that the trial court correctly placed the burden of proof in the present case upon the plaintiff/ executrix.
In Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979), the Supreme Court found that the authority of the courts to regulate the practice of law requires the enforcement of the Code of Professional Responsibility relative to the regulation of attorney's fees. Although parties are permitted to contract with respect to attorney fees, such attorney fees are nevertheless subject to review and control by the courts. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). There the court stated:
The Code of Professional Responsibility which regulates attorneys' practices has been recognized as having the force and effect of substantive law. Saucier v. Hayes Dairy Products, Inc., supra.

The Code of Professional Responsibility, DR 2-106, Fees for Legal Services, provides in pertinent part:

*389 (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
The trial court found that an administration of the Herrle succession was appropriate due to the existence of the family business, a small closely-held corporation. Expert testimony of plaintiff's and defendant's witnesses had shown that the problems inherent in the continued operation of such businesses are reasons for which an administration might be necessary. The court went on to find that there was difficulty and rivalry among the heirs, as Mrs. Orgeron had testified that there were three periods of time from six to nine months each when certain factions were not even communicating with certain other factions. In addition, the succession involved preparation of a complicated Federal estate tax return, which further justified an administration. The court was impressed with the fact that Mr. Weir had been the family attorney for several years, and that in setting his fee he was aware of the potential difficulties with the heirs and the estate.
Among other difficulties encountered in this succession, Mr. Weir was involved in (1) valuing the stock of the family corporation, Mr. Herrle having bequeathed his interest therein to his sons; (2) in computing the value of real estate left to the Herrle daughters, (3) along with determining a sum of cash sufficient to satisfy their legitime; and (4) in valuing the testamentary lifetime usufruct in favor of (then) Mrs. Herrle.
Mr. Weir submitted a statement to the court for 264.25 hours of legal work on the succession. The account was detailed, derived from Mr. Weir's Lawyer's Desk Book, the succession proceedings, the checking account, correspondence, and other pertinent data. Some 66 of these hours were spent in preparation and defense of the Federal Estate Tax return which underwent audit. The testimony of Mr. Bruce Miller, an attorney, who, at the time, was an estate tax attorney with Internal Revenue and audited the return in question, supported this latter time estimate. The hourly fee charged by Mr. Weir ranged from $100 per hour in 1979-81, to $120.00 per hour after 1982, to $150 per hour for the audit work "due to complexity and special skills required." The testimony of the expert witnesses called establish to our satisfaction that these charges were within a reasonable range for the work involved.
Plaintiff-appellant contends that Mr. Weir could have closed the succession after the tax audit in 1980. Mr. Weir testified that he prepared a petition to be placed in possession after that time, but that the Herrle daughters refused to sign the documents. While Mrs. Orgeron and her daughters denied this, and the daughters in particular denied any serious family discord, it appears that the court found Mr. Weir to be more credible on this point, and we cannot say such a credibility assessment was clearly wrong.
Mr. Weir testified that there was constant family discord, "sibling rivalry" and that (then) Mrs. Herrle asked him to "hold *390 off" in the succession between 1980-1984, during which period of time Mrs. Herrle remarried (and became Mrs. Orgeron), causing more upset in the family on the point of family harmony. The Herrle daughters stated they never refused to sign any documents, nor did they have serious conflicts with their brothers. However, Michael Power, an attorney who was retained by the sisters in 1980, questioned the appraisals and valuations obtained by Mr. Weir and even (prematurely) filed a motion to traverse a detailed descriptive list not yet filed into the court record. Mr. Power testified that all communications between sisters and brothers were handled through the parties' respective attorneys. Therefore, it certainly appears that the sibling strife contributed towards the prevention of an early conclusion of the succession under administration. Consequently, we agree with the trial judge who, after evaluation and weighing the evidence presented, found that there were difficulties encountered by Mr. Weir which warranted a substantial fee.
After a thorough review of the evidence, we find no manifest error in the trial court's conclusion that the burden of proof was on the plaintiff-appellant to prove that the attorney's fee was either excessive or unreasonable under the Code of Professional Responsibility, and that she failed to carry this burden. The learned trial judge also stated that the fee was "perhaps high, but I cannot say that it was excessive and I'm not firmly convinced that it was an excessive fee...." We likewise agree with this conclusion and certainly cannot say that it is manifestly erroneous.
For the foregoing reasons, the judgment of the trial court is affirmed, with all costs of this appeal being taxed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Art. 3244. Effect of Inclusion of claim in petition or in tableau of distribution

The inclusion of the claim of a creditor of the succession in the succession representative's petition for authority to pay debts or in his tableau of distribution creates a prima facie presumption of the validity of the claim; and the burden of proving the invalidity thereof shall be upon the person opposing it.