LANDRIEU, Judge.
We are asked to review the trial court’s judgment on a motion to traverse the Descriptive List filed in the succession proceedings of Chieko Katakura Hoffman. To the extent that the judgment of the trial court determined matters beyond the value of succession assets at the date of the decedent’s death or the rights and obligations of a corporation in which the estate of the succession owned stock, it was in error and we reverse.
FACTS:
On December 19, 1987, Chieko Katakura, wife of Henry William Hoffman, Jr., died testate. She was survived by three children, Robert Henry Hoffman, Sr., Darlene Lynn Hoffman Rost, and Mary Ann Hoffman Schulz. In her will, she named Robert and Darlene as her testamentary executors, and she left to them her “share in all of the businesses owned by my estate at the time of my death.” The balance of her estate, she gave equally to her three children. Her two daughters, Darlene and Mary Ann, settled all claims between their father and each other arising out of her succession for a cash payment of $50,-000.00 each from their father as well as various movable property. Their brother, Robert Henry Hoffman, Sr. intervened in this partial settlement of the estate and released his interest in any property that his sisters received.
Among the remaining assets of the succession is stock in the three incorporated businesses referenced in the will, Ace & Diamond Radiator of Jefferson, Inc., Ace & Diamond Radiator Shop Corporation and Southern Radiator Supply Co., Inc. [hereinafter “the corporation”]. As of March 31, 1988, the stock of the corporation was valued at $80,000.00 by Chaffe & Associates, Inc., Investment Bankers. Utilizing the corporate balance sheet, D.B.H. Chaffe III based the value on all recorded net assets and liabilities, including a $32,500 debt owed by Robert Henry Hoffman, Sr. to the corporation.
From 1978 until early 1988, Robert Henry Hoffman, Sr., the couple’s son, managed Ace & Diamond Radiator of Jefferson, Inc. Although he testified that he was paid initially as a salaried employee, at approximately $300.00 per week, he claims to have been promised twenty (20%) per cent of the profits from this business. In 1982, two corporate checks, in the respective amounts of $2,000.00 and $18,000.00, were made payable to Mr. and Mrs. Robert Hoffman, Sr. The checks were used by this couple as a down payment on a house. Although Robert Hoffman maintains that the pay *896 ment was a bonus in lieu of a percentage of the business profits, the $18,000.00 check was specifically designated on its face as a “Loan,” and Robert Hoffman failed to declare these sums as income when he paid state and federal taxes for 1982. He did, however, admit borrowing from the business $10,000.00 for a new roof for his house and $3,000.00 for an air conditioning system. In contrast, Henry Hoffman claimed that his son had borrowed a total of $35,000.00, including the $20,000.00 down payment.
Although the amount of the loan is disputed, it is agreed that repayment to the corporation was made with monthly installments of $200.00, and that the debt was reduced by the amount of $2,500.00. The last of these payments apparently was made on February 28, 1985. Although the bookkeeper for the corporation testified that further payments were requested and promised, Robert Hoffman contended that his mother had forgiven the debt.[1] He further testified that sometime in 1987, in response to the request for payment from the bookkeeper and his father, he made it clear that he did not intend to make additional payments. Henry Hoffman disputes this assertion and notes that the $32,500.00 balance was carried each year on the ledger sheets of the corporations.
After their mother’s death, the three children obtained $6,000.00 from Henry Hoffman, through the corporation, to fly to Japan to dispose of their mother’s cremated remains in accordance with her perceived wishes. One Thousand Two Hundred ($1,200.00) Dollars of that sum, which was not spent, was returned and deposited back into a corporate account. Henry Hoffman contends that the remaining $4,800.00 was a loan, which has not been repaid.[2]
He also claims that community debts have accrued after Mrs. Hoffman’s death. Henry Hoffman has continued to make mortgage payments on certain real estate which was a community asset. Although the mortgage balance, listed as a community debt on the proposed descriptive list, was $15,264.00, Henry Hoffman contends in brief that the loan had been paid down and that the remaining balance was established to be $11,162.25.[3] Also, Henry Hoffman allegedly made loans to the corporation and complains that those completed after the death of his wife were not considered in valuing the stock of the corporation as an asset of the estate. According to his testimony, some of the money came from insurance policies which he cashed in and $25,000.00[4] had been borrowed from the First National Bank of Commerce, placed in his personal checking account, and, from there, transferred into the corporation as needed. Henry Hoffman alleges that he is entitled to the repayment from the estate of these funds, which he estimates in his testimony[5] to total $35,000.00.
With the Petition for Probate, the executors filed into the record a Sworn Descriptive List. On January 18, 1990, Henry Hoffman, the surviving spouse filed a motion to traverse the Descriptive List filed by the executors and proposed an alternative list, which included liabilities as well as *897 the additional assets discussed herein. The parties and counsel ultimately agreed on most items on the alternative Descriptive List, but asked the trial court to rule on seven items (Items # 12, 13, 17 and 20 listed under “Community Assets” and Items # 5, 8, and 31 under “Community Debts and Liabilities”), which they designated “at issue.”
After oral argument and a review of memoranda, the trial court, in its judgment of May 22, 1992, concluded as follows: Item #17: Robert Hoffman owes to the corporation a balance on his debt of $32,-000.00. Since he had acknowledged the debt, it has not prescribed.
Item # 20: Robert Hoffman owes to the corporation an additional sum of $1,600.00, his share of the travel advance.
Item # 5: The corporation must reimburse Henry Hoffman $35,000.00 for loans after the death of his wife.
Item # 8: Henry Hoffman is owed reimbursement in the amount of $15,264.00 for mortgage payments on community property-
item #31: Henry Hoffman is owed $25,-000.00 by the corporation for a personal loan from the First National Bank of Commerce.
Robert Henry Hoffman, Sr. appeals this judgment.
Discussion:
Pursuant to Article 2952 of the Code of Civil Procedure, an heir or other interested party may file in the succession proceeding a detailed, descriptive list of all items of property composing the succession of the deceased and valued at the time of the death. Article 3136 permits a descriptive list, showing the location of all items of succession property, setting forth the fair market value of each item at the date of death, and sworn to and subscribed by the person filing it, to be filed with the Department of Revenue in lieu of an inventory. Unless successfully traversed, the descriptive list is prima facie proof of all matters shown therein. La.Code Civ.Proc. Ann. art. 3137 (West Supp.1993).
To the extent the judgment of the trial court determined matters beyond the value of succession assets at the date of the decedent’s death, it is in error. A motion to traverse the executors’ descriptive list is not the proper vehicle to establish or collect debts that were incurred after the death of Mrs. Hoffman. Although obligations of the decedent accrued after death do form a part of the deceased’s estate, according to La.Civ.Code Ann. art. 872 (West Supp.1993), they do not affect the descriptive list. Furthermore, a succession proceeding is not the appropriate forum to determine either the rights or obligations of a corporation in which the succession simply owns stock. Accordingly, our discussion will be limited to the remaining items on the descriptive list, which were designated “at issue” and raised as error by the appellant.
Assets in Bank Box:
The trial court failed to rule on Items # 12 and # 13 on the proposed Descriptive List, under “Gross Community Assets,” which included jewelry and $10,-000.00 in cash, purportedly removed from the home and the bank box by the children. Although the items were marked “at issue” on the Stipulation, there was no testimony or other evidence introduced at trial concerning their existence. Furthermore, in brief, Henry Hoffman asserts that he has abandoned these items from his proposed Descriptive List since he could offer no proof in that regard. Accordingly, the trial court properly withheld ruling on a matter no longer before it.
Loans to Robert Henry Hoffman, Sr.:
Our focus is the value of succession property at the date of Mrs. Hoffman’s death. Since corporate stock is an asset of the succession, its value on December 19, 1987 is a proper matter for our determination. To the extent that a debt in favor of the corporation affects the value of its stock at the time of Mrs. Hoffman’s death, the existence and value of the debt is relevant.
*898 On the basis of the documentary evidence and testimony, the trial court was not clearly wrong in concluding for the purposes of the Descriptive List that Robert Henry Hoffman, Sr. borrowed from the corporation a total of $35,000.00 during the existence of the community between Chieko and Henry Hoffman. It is undisputed that periodic installment payments made until February 28, 1985 reduced the principal balance of the $35,000.00 loan by $2,500.00. Although Robert Hoffman testified that his mother forgave that remaining debt before her death, there is no evidence, other than his own self-serving testimony, either of such action or of her capacity to forgive a debt owed to the corporation.
At issue, however, is whether this debt in favor of the corporation should be considered in evaluating the corporate stock even though Robert Hoffman claims that the debt has prescribed. Although we decline to hold that Robert Hoffman owes to the corporation a balance on his debt of $32,500.00, because the corporation claims the debt as an asset and may have a valid claim, we find that amount to be properly considered in valuing the corporate stock on the Descriptive List.[6]
Advances to the Businesses by Henry Hoffman:
Although any advances to the businesses after December 19, 1987 do not affect the value of its stock for purposes of the Descriptive List, earlier advances, included on the corporate balance sheets as accounts payable, should have figured into the value of the stock. In fact, Item # 31 on the proposed Descriptive List was included in part. According to the revised schedule of gross community assets and liabilities prepared by D.B.H. Chaffe III, $13,461.00 of the FNBC loan balance, “the only portion shown on Ace & Diamond balance sheet 2/28/88,” was included in accounts payable in valuing the companies. Since the record contains no evidence of either the timing or the existence of an additional $11,539.00 liability to FNBC, we conclude that the value of the stock on the Descriptive List already reflects any relevant advances to the business before the death of Mrs. Hoffman. Furthermore, the trial court erred in ruling that the corporation owed Henry Hoffman $25,000.00, a matter beyond the scope of the motion to traverse the Descriptive List.
CONCLUSION:
In reviewing the parties’ disputed items on the proposed descriptive list, filed in this succession proceeding, we reverse in part, amend and affirm in part, and affirm in part the judgment of the trial court and find as follows:
Items # 12 and 13: Since Henry Hoffman abandoned these items from his proposed Descriptive List, the trial court properly withheld ruling on the matter.
Item # 17: We conclude that Robert Hoffman’s debt in favor of the corporation, in the amount of $32,500.00, was properly considered in valuing the corporate stock at the date of Mrs. Hoffman’s death on the original Descriptive List.
Item # 20: Robert Hoffman’s alleged debt to the corporation for travel expenses after his mother’s death does not affect the value of the corporate stock on the Descriptive List and, accordingly, should not have been considered on a motion to traverse.
Item # 5: Henry Hoffman’s loans to the corporation after the death of his wife do not affect the value of the corporate stock on the Descriptive List and, accordingly, should not have been considered on a motion to traverse.
Item # 8: Mortgage payments on community property after the death of Mrs. Hoffman do not affect the Descriptive List and should not have been considered on a motion to traverse.
Item #31: $13,461.00 of the alleged personal loan from FNBC by Henry Hoffman for the benefit of the corporation was properly considered in valuing the corporate *899 stock at the date of Mrs. Hoffman’s death on the original Descriptive List. No further adjustment is warranted.
AMENDED AND AFFIRMED IN PART; REVERSED IN PART; AND AFFIRMED IN PART.

. Robert Hoffman offered neither testimonial nor documentary evidence to support his claim that his debts to the corporation had been forgiven. He did testify that the basis of his mother’s action was her knowledge that her husband, Henry William Hoffman, Jr., was taking money from the corporation and giving it to another woman, with whom he was living.

. He included this sum as a "Gross Community Asset” in his "Affidavit of Descriptive List” filed on January 18, 1990.

. Delinquent taxes on real estate owned by the community totalled 111,165.25, according to Exhibit #5 submitted by Henry Hoffman.

. Although some of the money may have been dispersed to the corporation after the death of Mrs. Hoffman, it appears that the |25,000 loan from FNBC predated her death. In valuing the corporate stock as of March 31, 1988, $13,461.00 of the loan, shown on the corporate books as a bank loan, was included as a liability in the valuation of the companies.

. His "Affidavit of Descriptive List,” however, includes among the "Community Debts and Liabilities” both the $35,000.00 balance due to Henry Hoffman for loans to the business as Item # 5 and the $25,000.00 balance on the First NBC loan as Item #31.

. Although the stock was valued "as of March 31, 1988" rather than December 19, 1987, we find no evidence to indicate that the value fluctuated between those dates.