11ARMSTRONG, Judge.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
In this succession proceeding, appellants Leo A. Guenther and Hall Townsend, testamentary co-executors of the estate of the late Charles H. Dorand, appeal from a trial court judgment amending the sworn descriptive list to reduce the value of stock held by decedent at the time of his death and denying appellants additional fees incurred by them in defending the succession. We amend the judgment of the trial court in part and affirm it as amended.
Charles H. Dorand died on June 7, 1990. Leo Guenther and Hall Townsend were named co-executors in the decedent’s statutory will. Decedent was survived by two *524 grandchildren, Gay Dorand Zehner and Cari Dorand, a great-grandchild born to Carl, and two great-grandchildren born of a third grandchild who predeceased decedent. A month after decedent’s death Gay Dorand Zehner and Carl Dorand filed suit to annul decedent’s last will and testament on the ground that he lacked testamentary capacity. The trial court upheld the statutory will. This court affirmed that decision and the Louisiana Supreme Court denied Zehner and Dorand’s application for writ of certiorari.[1]
|2In the instant case, Gay Dorand Zehner and Carl Dorand[2] opposed the tableau of distribution and final account and filed a motion to traverse the sworn descriptive list. They alleged that the sworn descriptive list excessively valued two pieces of immovable property (a residence and a piece of commercial property), household furnishings contained therein, and stock in a closely held corporation. They also claimed appellants were seeking fees to which they were not entitled. The trial court heard and viewed evidence concerning the valuation of the stock, the immovable property, and household furnishings. The trial court reduced the values in the sworn descriptive list as to the household furnishings and the stock. The court found the values placed on the immovable property were accurate. It amended the Tableau of Distribution and Final Account to reflect the reductions. The trial court also reduced the amounts of additional executor and attorney fees listed by appellants, from $10,175.00 to $3,392.00 for additional attorney fees, and from $7,800.00 to $2,600.00 for additional executor fees.
Appellants now appeal claiming the trial court erred in valuing the stock and in reducing the amount of additional executor and attorney fees for work done by them in defending the succession.

STOCK

The decedent held 100 shares of stock in American Electric & Display Co., Inc. (“American”), a company providing lighting services for trade shows, at the time of his death. American was a closely-held (family-owned) corporation, with the decedent holding approximately 87½% of the total shares of stock. The stock was valued at $162,925.08 on the sworn descriptive list. The trial court reduced that to $82,640.00, the valuation placed on the stock by appellees’ expert witness. One of the appellant/executors, Leo A. Guenther, was a certified public accountant who had done accounting for American for “many, many years.” Guenther stated that he had done “quite a few” successions and had given ^depositions in connection with some of those, but had not testified as an expert in any courts in succession proceedings.
Guenther valued the stock at “book” value, or the value of the stock based on the books of the company. That was $162,925.08. He valued the business as a “going concern,” and arrived at the $162,925.08 figure by averaging the book values of the business for two years — as of August 31, 1989, the end of the fiscal year prior to decedent’s death, and as of August 31, 1990, the end of the fiscal year in which deeedejnt died. He admitted that there “were quite a few tax liens” and didn’t know if those had been settled as of the time of decedent’s death. However, he further admitted that even after decedent’s death the U.S. Internal Revenue Service could have “easily come in and demandfed] payment of [the] payroll taxes and shut the business down.” He testified that the decedent had “sort of lost control of his company” about seven years prior to his death and someone else had taken over its management. Apparently, the person managing the business failed to pay payroll taxes for a number of years. Guenther said he had not factored-in the pending IRS problems when valuing the business and the stock. Guenther said the business had operated at a loss for the previous two or three years at the time he valued it. He did not factor-in this history of losses when making his valuation because he *525 thought the business was being mismanaged and someone else could operate it profitably.
Guenther stated that the executors, he and appellant Hall Townsend, concluded it would be in the best interest of the succession to sell the business. He said the business was finally sold six months after decedent’s death. The business only operated for three months after decedent’s death. Guenther said the actual cash value of the business, the value of the entire corporate assets of the business, “should be” $83,305.00. He said this was not the value of the shares of stock listed on the sworn descriptive list because it was not the value of the stock at the time of decedent’s death. Mr. Guenther admitted that his primary interest in seeing the stock valued at book value was because it would mean a higher fee for his work as executor, which was determined by statute at a percentage of the value of the succession.
I ¿Appellees presented the testimony of Jack Diemes, a certified public accountant. Mr. Diemes testified that he had previously worked on successions in the capacities of accountant and executor. He said his expertise in the area of successions lay in the valuation of stock in closely-held corporations. He had previously testified in federal and state courts concerning the value of such stock fewer than ten times, but had valued such stock “a lot more.” The trial court qualified Diemes as an expert in appraisal of stock and succession procedures.
Diemes valued the stock using a “liquidation” approach. He used the liquidation approach because the business was sold shortly after the decedent’s death and it was not going to be valued as a going concern. Diemes stated that even though the business operated for some three months after the decedent’s death, it was operating to be liquidated. He inferred an intent to liquidate from the fact that the business was sold six months after decedent’s death. However, Diemes said he would not have inferred an intent to liquidate if the business had been sold, hypothetically, two years after the decedent’s death. But, he said if he had not used the liquidation approach he would have taken “deep” discount on the value of the stock because the company was suffering losses for several years prior to the decedent’s death with no indication that it was going to have a turnaround and operate at profit subsequent to his death.
Diemes started with the book value of the stock as of August 31, 1990, the end of the company fiscal year, coming two months after the decedent’s death. He said he then increased or decreased that figure based upon the figures he had. He increased the liability of the corporation and came up with a liquidation value of $82,640.00. He said he considered debts incurred after the decedent’s death because he said in closing down a business the business will incur costs. He said he factored-in those costs into his valuation. Diemes confirmed that he had no access to the books of the company. During his testimony he mentioned only federal income and payroll tax returns.
La.C.C.P. art. 2952 provides that a sworn descriptive list be taken “of all items of property composing the succession of the deceased, stating the actual cash value of each item at the time of death of the deceased.” La.C.C.P. art. provides that the descriptive list [ 5set forth the “fair market value” of each item “at the date of the death of the deceased.” The values set forth in the descriptive list shall be accepted as correct unless the list is amended or successfully traversed. La.C.C.P. art. 3137.
Generally, events occurring after the death of the deceased should not affect the value of stock for purposes of a descriptive list valuation. Cf. Succession of Katakura, 621 So.2d 893 (La.App. 4th Cir.1993). However, in the instant ease, the after-death debt incurred in liquidating the business, and any losses incurred during the operation of the business pending liquidation, were evidence bearing on the fair market value of the stock as of the time of decedent’s death, according to Jack Diemes. Mr. Diemes was peculiarly qualified by previous experience to testify as to the valuation of stock in closely-held corporations for purposes of establishing values for successions proceedings. The fair market value of stock can be determined *526 by a number of methods.[3] Mr. Diemes, who was a disinterested third-party, valued the 100 shares of stock at $82,640.00 using one method, Mr. Guenther used another method. Coincidentally, as previously mentioned, Mr. Guenther admitted that the cash value of the business assets which were to be distributed to the legatees was $83,500.00.
In reviewing differing expert testimony, the trier of fact determines which evidence is the most credible. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La. 1990); Miller v. Miller, 602 So.2d 330 (La. App. 4th Cir.1992). The trial court’s determination of the fair market value of the stock is a factual finding which will not be disturbed on appeal unless the record does not furnish a basis for the finding or the finding is clearly wrong. Moody v. Moody, 622 So.2d 1381 (La.App. 1st Cir.1993). Considering the record evidence, we are unable to say that the trial court was clearly wrong in accepting the value placed on the stock by Mr. Diemes, $82,640.00.

ATTORNEY AND EXECUTOR FEES

leAppellants included additional attorney fees in the amount of $10,175.00 and additional executor fees in the amount of $7,800.00 in their tableau of distribution for work performed defending the succession against the suit brought by appellees Gay Dorand Zehner and Carl Dorand contesting the decedent’s last will and testament. These fees were in addition to the 2½% executor fee set by La.C.C.P. art. 3351 and the 5% attorney fee set by the executor.[4] As previously stated, the estate prevailed at the trial and appellate court levels, and writs were denied by the Louisiana Supreme Court. The trial court failed to mention these additional fees in its original judgment on appellees opposition to the tableau of distribution and final account. Subsequently, appellees applied for and were granted a new trial wherein the trial court reduced the attorney fees $3,392.00 and the executory fees to $2,600.00. The trial court did not give any written reasons for its judgment despite a request from appellants pursuant to La. C.C.P. art. 1917.[5]
Attached to the tableau of distribution are two lists itemizing the hours of work performed by the attorney, 91.25 hours, and the executors, 78 hours, defending against appel-lees’ lawsuit. The number of hours appear reasonable. Based on the reduction by the trial court the attorney was paid at the rate of $37.00 per hour, the executors, $33.33 per hour.
The costs incurred in defending a testament from attack, including attorney fees, should generally be borne by the testator’s succession. Succession of Bradford, 130 So.2d 702 (La.App. 2d Cir.1961). The trial court obviously recognized this principle or it would not have awarded appellants any fees for the defense of the testament. Generally, the inclusion of the claim of a creditor in the tableau of distribution creates a prima facie presumption of the validity of the claim. La.C.C.P. art. 3244. This article has been held to apply to claims by a succession representative when that representative has ex-pendedj^money to benefit the succession. See Succession of Meier, 204 So.2d 793 (La. App. 4th Cir.1967). Appellants presented itemized lists detailing the number of hours and type of work performed by them in defending the testament from attack. Based on the total amount of the fees listed in the tableau of distribution, the attorney fees were at the rate of $111.50 per hour for 91.25 hours, including 13 hours in court, and the executor fees were at the rate of $100.00 per hour for 78 hours. As previously stated the number of hours appears reasonable. The *527 rates also appear reasonable. Considering this, and the absence of any reasons given by the trial court for the reduction of the fees, we find the trial court abused its discretion in reducing the amount of attorney and executor fees listed in the tableau of distribution. The judgment will be amended to increase the award of additional attorney fees to the amount of $10,175.00 and additional executor fees to the amount of $7,800.00.
For the foregoing reasons, we amend the judgment of the trial court to increase the award of additional attorney fees from $3,392.00 to $10,175.00 and to increase the amount of additional executor fees from $2,600.00 to $7,800.00. We affirm the judgment of the trial court in all other respects and as amended.

AMENDED; AFFIRMED AS AMENDED.

LANDRIEU, J., concurs in part and dissents in part.
LANDRIEU, Judge, concurring in part and dissenting in part.
I would affirm all aspects of the judgment of the trial court including the executor and attorney fees, as well as the evaluation of the estate.

. Succession of Dorand, 596 So.2d 411 (La.App. 4th Cir.1992, writ denied, 600 So.2d 661 (La. 1992).

. Jo Ann Durand, natural tutrix of the two great-grandchildren born to the predeceased grandchild, was originally a party along with Carl Dorand and Gay Zehner but is not named in the trial court judgment nor represented on appeal.

. In Moody v. Moody, 622 So.2d 1381 (La.App. 1st Cir.1993), accountants used five different methods to determine the value of stock in a community property partition proceeding, book value, economic net worth, capitalization of earnings, capitalization of cash flow, and price-earnings ratio.

. Appellees argue that the trial court abused its discretion in awarding any additional executor and attorney fees. However, appellees neither appealed nor answered appellants appeal. Therefore, we will not consider this argument. La.C.C.P. art. 2133.

.Our disposition of this appeal renders moot appellants assignment of error that the trial court erred in failing to give written reasons for its reduction of the additional fees.