SUCCESSION OF LAWRENCE       *       NO. 2023-CA-0715
J. RANDAZZO
                             *

                                     COURT OF APPEAL
                             *

                                     FOURTH CIRCUIT
                             *

                                     STATE OF LOUISIANA
                    * * * * * * *


CONSOLIDATED WITH:                   CONSOLIDATED WITH:

SUCCESSION OF JOSEPHINE              NO. 2023-CA-0716
LOYACANO, WIDOW OF,
LAWRENCE J. RANDAZZO


APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 87-433, DIVISION "AD HOC"
Honorable Jerome J. Barbera, III
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Rachael D. Johnson)

Salvador J. Randazzo
Lorene A. Randazzo
321 Jade Court
Madisonville, LA 70477

      APPELLANTS, IN PROPER PERSON

Jack E. Truitt
Michelle Mayne Davis
Kaylin K. Storey
Lou Anne Milliman
THE TRUITT LAW FIRM
1321 Ochsner Blvd., Ste. 200
Covington, LA 70433

Jennifer Cortes-Johnson
Nancy N. Butcher
CORTES-JOHNSON & BUTCHER, LLC
3900 N. Causeway Blvd., Suite 1200
Metairie, LA 70002

COUNSEL FOR APPELLEE, JOEL RANDAZZO FORJET

Petrina Randazzo Meyers
711 Kellywood Court
Covington, LA 70433

APPELLEE, IN PROPER PERSON

**AFFIRMED**
**SEPTEMBER 6, 2024**

This is a succession proceeding. Appellants, Salvador J. Randazzo and Lorene A. Randazzo, appeal the June 12, 2023 judgment of the district court, which ordered certain expenses of the successions be paid from the assets of the successions; sustained the motion to traverse the tableaus of distribution; and denied the other claimed expenses listed in the tableaus of distribution. For the reasons that follow, we affirm the judgment of the district court.

### FACTS AND PROCEDURAL HISTORY

This appeal arises from a dispute over reimbursement of expenses allegedly incurred by Salvador J. Randazzo,[1] who is the former executor of his parents' consolidated successions.[2] Appellants' other two siblings – Appellees, Joel

---

[1] Salvador J. Randazzo is an attorney, but he and Lorene A. Randazzo both appear in proper person. We refer to them, collectively, as "Appellants." In quotations from the lower court's reasons for judgment, Salvador J. Randazzo is sometimes referred to as the "Executor." As discussed herein, he was removed as executor on February 6, 2023, and our Court's record does not show that another executor was appointed. For consistency, we refer to Salvador J. Randazzo as "Executor" throughout the opinion.

[2] In our opinion, we refer to the decedent Lawrence J. Randazzo as "Father" and the decedent Josephine L. Randazzo as "Mother."

1

Randazzo Forjet and Petrina Randazzo Meyers ("Siblings") – opposed court

approval and payment of certain alleged expenses.

The district court set forth the following factual background of this matter in

its reasons for judgment,[3] issued with the judgment presently on appeal:

> Lawrence J. Randazzo died on March 3, 1998. His
> Succession … was opened with a filing on April 9, 1999,
> including a petition to probate his last will and testament,
> and the appointment of Salvador J. Randazzo, his son and
> heir, as Executor without bond or other security[.]
>
> Josephine L. Randazzo, wife of Lawrence J.
> Randazzo, died on April 3, 2008. Her Succession … was
> opened with a filing on October 24, 2008, including a
> petition to probate her last will and testament, and the
> appointment of Salvador J. Randazzo, her son and heir,
> as Executor without bond or other security[.]
> …
> The executor, Salvador J. Randazzo, is one of four
> children of the decedents. The others are Lorene
> Randazzo, Petrina Randazzo Meyers, and Joel Randazzo
> Forjet. In 2011, over thirteen years after their father died
> and over three years after their mother died, sisters
> Petrina and Joel retained an attorney and filed a petition
> to remove their brother as executor, claiming that he had
> not filed an annual accounting for either succession
> despite the many years that had passed since their parents
> died[.] [A]ccountings were prepared by [the executor] in
> 2022 and provided to other parties, but the record does
> not reflect their filing with the Clerk[.] They also
> complained that he had not responded to discovery
> requests from their attorney[.]
>
> The case finally went to trial in 2014, and, while
> the motion to remove him was denied, the Court
> appointed his sister Petrina as co-executor, and the

[3] Appellants designated the record on appeal, and only some of the pleadings discussed in this procedural recitation appear in this Court's record. We also recognize, as courts have long held, that the appeal is "taken from the judgment, not the written reasons for judgment." *Greater New Orleans Expressway Commission v. Olivier*, 02-2795 p. 3 (La. 11/18/03), 860 So.2d 22, 24. Nevertheless, the appellate court may review the reasons for judgment to the extent they provide elucidation for the lower court's ruling and to determine whether the judgment contains legal error. *Wooley v. Lucksinger*, 09-0571, p. 78 (La. 4/1/11), 61 So.3d 507, 572; *Roy Anderson Corp. v. 225 Baronne Complex, L.L.C.*, 17-1005, p. 6 (La. App. 4 Cir. 7/11/18), 251 So.3d 493, 499.

executor was ordered to file annual reports for the years after his mother's death in 2008; he was also ordered to answer the discovery. A motion for a new trial by the executor was granted, setting aside the results of the hearing.

The [district court judge, sitting ad hoc] was appointed to preside ad hoc in this matter in July 2021. After a conference in August 2021 between the Court, the executor and his sisters' (Petrina and Joel) attorney, the executor was ordered to provide counsel with drafts of detailed descriptive lists in both successions within 30 days; drafts were provided, but the lists were not filed into the record until July 5, 2022.

The executor has never, by his own account in conference and in pleadings, opened a succession bank account in either proceeding, but instead he directed the entities that the decedents had co-ownership interests in to pay the heirs in equal shares when funds were disbursed[.]

The executor engaged in litigation in 2012 and 2015 with St. Bernard Parish Government over issues involving succession property damaged by Katrina, which involved issues about whether the property was being maintained properly; a second motion to remove the executor was filed by sisters Petrina and Joel in November 2016, prompted by new citations by St. Bernard Parish Government over the condition of the succession property in St. Bernard. The property has since been demolished as testified to by the representative of Parish Government at the trial of this motion to traverse.

The executor filed suit in 2015 in St. Bernard Parish on behalf of the successions against other family members who are co-owners of alleged succession property, alleging that they are not properly accounting for and distributing income from the jointly owned property; that matter is still pending, … with a motion to recuse the presiding judge filed by the executor. The motion to recuse was denied on January 19, 2022, after hearing, and in the reasons for judgment, the ad hoc judge referred to the history of that case and other litigation (as described in the executor's motion to recuse) as "tortured and combative."

(Emphasis omitted).

Subsequently, the 2014 motion to remove the executor, filed by Siblings, for which a new trial was granted, proceeded to trial on February 2, 2023. All four heirs appeared at trial. On February 6, 2023, the district court granted the motion and ordered Salvador J. Randazzo removed as executor. No appeal was taken from that judgment.

While the motion to remove the executor was pending, Executor retained an attorney (now discharged), who prepared a tableau of distribution for each of the successions. On August 31, 2022, Executor sent notice of the petition for filing the tableau of distribution for each of the successions. On September 12, 2022, Siblings filed a motion to traverse and objections to both tableaus of distribution. On September 20, 2022, Executor filed in the district court both petitions for filing the tableaus of distribution.

In the tableau for Father's succession, Executor sought reimbursement for alleged debts and succession expenses, in the sum of $140,708.82. In the tableau for Mother's succession, Executor sought reimbursement for alleged debts and succession expenses, in the sum of $332,314.91.

The motion to traverse proceeded to hearing on April 18, 2023. Siblings appeared for the hearing. Appellants were served with the notice of hearing, did not appear, and were not represented by counsel at the hearing. On June 12, 2023, the district court rendered judgment as follows:

> IT IS ORDERED, ADJUDGED, AND DECREED that the following sums, identified as legitimate expenses of the successions named above and listed in the Tableaus of Distribution, are hereby homologated, and

these sums are, therefore, properly payable to the creditor listed in the Tableaus from the assets of the successions, except to the extent they have already been reimbursed:

Succession of [Father]:

a. funeral expenses - $9,134.37
b. appraisal fee - $2,600.00
c. Clerk of Court costs - $900.00

Succession of [Mother:]

a. funeral expenses $11,180.00
b. grass cutting & maintenance $25,228.50
c. taxes on Livaccari $7,302.38
d. taxes on [Urquhart] property $3,213.40

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all of the other expenses, claims, and charges listed in the Tableaus of Distribution filed in these proceedings are denied, sustaining the Motion to Traverse as to those items, and those items shall not be paid or reimbursed from assets of these successions;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of these proceedings are assessed to Salvador J. Randazzo[.]

This appeal follows.

## LAW AND ANALYSIS

Appellants assert that the lower court committed legal error in two respects: first, in failing to homologate (grant court approval to pay) various expenses listed in the tableaus of distribution; and second, in taxing all costs against Executor.

**Traversal of Tableaus of Distribution**

*Legal Principles and Standard of Review*

As a general matter, the appellate standard of review of factual findings is whether the lower court was manifestly erroneous or clearly wrong. *Succession of Watkins*, 16-0356, p. 6 (La. App. 4 Cir. 12/7/16), 206 So.3d 1237, 1241. By the

5

same token, appellate review of a district court's judgment homologating the tableau of distribution – or refusing to grant an order doing so – is subject to the manifest error standard, and the judgment "must be affirmed if the record as a whole reveals that there is a reasonable factual basis for the decision." *Succession of Mouton*, 20-0007, p. 5 (La. App. 3 Cir. 6/17/20), 300 So.3d 430, 434 (quoting *Succession of Manheim*, 98-2051, pp. 5-6 (La. App. 4 Cir. 4/21/99), 734 So.2d 119, 123); *In re Sporl* ("*Sporl I*"), 03-1084, p. 10 (La. App. 4 Cir. 10/1/03), 859 So.2d 732, 737.

Legal error occurs when a lower court applies incorrect principles of law and such error is prejudicial; legal error is prejudicial when it materially affects the outcome and deprives a party of substantial rights. *Mouton*, 20-0007, p. 5, 300 So.3d at 434; *Evans v. Lungrin*, 97-541, 97-577, p. 7 (La. 2/6/98), 708 So.2d 731, 735. Where legal error interdicts the fact-finding process, the manifest error standard no longer applies, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Evans*, 97-541, p. 7, 708 So.2d at 735.

Appellants' primary complaint is that the district court erroneously failed to reimburse Executor for certain claimed expenses from the succession funds. Executor raised his claims for reimbursement by filing petitions to homologate the tableau of distribution in each of his parents' successions. Siblings opposed the petitions by filing a motion to traverse the tableaus of distribution. Review of these claims warrants the following discussion of the pertinent succession procedure.

The tableau of distribution is a document listing estate debts that are to be paid from available succession funds. *See* La. C.C.P. art. 3303. The function of the tableau of distribution is to notify creditors and other parties interested in the succession that the succession representative[4] proposes to pay the listed estate debts and obtain court approval to make said payments.[5] Estate debts are debts of the decedent and administration expenses. La. C.C. art. 1415. Debts of the decedent are obligations the decedent incurred during his lifetime or those that arise as a result of his death, such as the cost of his funeral and burial. *Id.* Administration expenses are obligations incurred in the collection, preservation, management, and distribution of the estate of the decedent, *see id.*, which encompass "preserving, safeguarding, and operating the property of the estate, such as repairs, costs of maintenance and upkeep, interest attributable to a debt, and custodial fees." La. C.C. art. 1415, 1997 Revision Comments.

Ordinarily, a succession representative may pay an estate debt only with the authorization of the court. La. C.C.P. art. 3301. When a succession representative desires to pay estate debts, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those estate debts to be paid. La. C.C.P. art. 3303(A). An opposition may be filed at any time before the

---

[4] " 'Succession representative' includes an administrator, provisional administrator, administrator of a vacant succession, executor, and dative testamentary executor." La. C.C.P. art. 2826(3).

[5] La. C.C.P. arts. 3304 through 3306 govern the notice requirements for the petition for authority to pay estate debts, which are not at issue in this appeal.

tableau is homologated, and the opposition shall be tried as a summary proceeding. La. C.C.P. art. 3307(A).

### *Presumption of Validity of Claims*

The crux of Appellants' argument is the presumption of validity afforded to claims listed in a tableau of distribution. Pursuant to La. C.C.P. art. 3244:

> The inclusion of the claim of a creditor of the succession in the succession representative's petition for authority to pay debts or in his tableau of distribution creates a prima facie presumption of the validity of the claim; and the burden of proving the invalidity thereof shall be upon the person opposing it.

According to Appellants' argument, Executor is a creditor of the succession; in his capacity as executor, he listed his own claims, which are presumed valid; and Siblings failed to meet their burden to rebut those claims. Few cases illustrate with specificity how the presumption applies, and we provide a brief recitation of their facts here.

In *Succession of Meier*, 204 So.2d 793, 797 (La. App. 4th Cir. 1967), this Court recognized both the Article 3244 presumption and the lower court's discretion to reject reimbursement of legal expenses wherein the court was "unable to determine which items relate to services rendered" in the attorney's capacity representing the sole heir individually, "for which she would be obligated personally, or which items are legitimate charges against the succession." *See also Succession of Haydel*, 606 So.2d 42, 45 (La. App. 4th Cir. 1992) (recognizing the longstanding principle that "where the legal representation is primarily for the

8

personal benefit of the executor and not the estate, such fees may not be paid from

the property of the succession").

The *Meier* court noted:

> there is not one word of testimony in the transcript nor any documentary evidence offered to verify the items listed. The trial judge rejected them, and we find no error in his judgment on the face of the record before us.

204 So.2d at 797. This Court further explained that the Article 3244 presumption

does not prevent a lower court from rejecting claims, particularly where a

succession representative can prove disputed expenses and fails to come forward

with such proof:

> In the absence of opposition [the succession representative] is not required to verify or prove every item in the manner required when an item is in dispute. In this case no opposition to the administrator's account and tableau of distribution was filed and the only objection, as we have pointed out above, was raised by the court. The administrator and his attorney, however, cannot assert that they have been denied an opportunity to make the required proof of the contested items. They were well aware of the court's opposition to the items totaling $931.68, since the court had twice previously rejected this claim. If they had proof sufficient to overcome the court's objection, it should have been submitted.

*Id.*

In *Manheim*, 98-2051, p. 9, 734 So.2d at 125, this Court found no manifest

error in the district court's factual findings that attorney's fees were reasonable and

the services benefited the succession. On an heir's opposition to the homologation

of the tableau of distribution, the lower court received conflicting evidence and

testimony from the opposing heir, the executor, and the attorneys regarding the

9

purpose of fees and particular actions undertaken to avoid litigation and minimize tax liability. *Id.*, 98-2051, pp. 8-9, 734 So.2d at 123-24. On review of the appellate record, this Court concluded that a reasonable factual basis existed for the district court's determination that the heir had failed to meet her burden to rebut the Article 3244 presumption of the attorney's fee's validity. *Id.*, 98-2051, p. 8, 734 So.2d at 124.

In *Succession of Dorand*, 94-1627, p. 7 (La. App. 4 Cir. 7/26/95), 659 So.2d 523, 527, this Court increased the attorney's fees and executor fees awarded in the judgment homologating the tableau. The record on appeal lacked any explanation of the lower court's reasoning for awarding an amount lower than listed in the tableau. Recognizing the Article 3244 presumption and the reasonableness of the work performed, this Court found the district court abused its discretion in reducing the fees from those amounts specified in the tableau and supported by "itemized lists detailing the number of hours and type of work performed by them in defending the testament from attack." *Id.*, 94-1627, p. 7, 659 So.2d at 526-27.

In *Succession of Herrle*, 517 So.2d 386, 388 (La. App. 5th Cir. 1987), the executrix sought to traverse her own tableau of distribution, which she had filed five years earlier. The executrix sought to challenge attorney's fees that she had included in the tableau, and which she had paid at the time without opposition. *Id.* On appeal, the reviewing court determined that the district court had properly placed the burden of proof on the executrix, as the party opposing the attorney's fees, as provided in La. C.C.P. art. 3244. *Id.* at 390.

10

In *Succession of Martin*, 335 So.2d 494, 498 (La. App. 2d Cir. 1976), opponents of the tableau of distribution filed an opposition, but offered no evidence to substantiate their opposition. They testified only that "they did not have any particular reason for opposition other than they felt the claim was unsupported." *Id.* The lower court overruled the opposition, which the appellate court affirmed, holding that under Article 3244, "[t]he mere filing of an opposition to the payment of a debt included in the succession representative's petition for authority to pay debts does not rebut the presumption of validity nor meet the burden of proving invalidity thereof." *Id.*

Summarizing these cases, Louisiana courts view the Article 3244 presumption as rebuttable, not conclusive. Where an opponent introduced contradicting evidence or where a lower court discerned that an executor could have come forward with supporting proof of a disputed expense and did not do so, the lower court's discretion in rejecting the claim or declining to homologate the tableau has been upheld on appeal.

### *Executor's Reimbursement Claims*

In the matter *sub judice*, Appellants complain that Executor should have been reimbursed for the following:

- all attorney's fees and court costs;

- Hibernia National Bank loan representing an amount Executor loaned Mother through a limited liability company to purchase another home after Hurricane Katrina (the "Jade Court property");

- "maintenance, supply and repair costs" and "multiple cleanings" for the succession property in St. Bernard Parish, which was damaged in Hurricane Katrina (the "Livaccari Drive property");

- property taxes for the Jade Court property;

- various property taxes in St. Bernard Parish;

- expenses to "Delta Fence" for the Jade Court property; and

- federal and state income taxes on behalf of Mother.

Siblings argue that they properly opposed the tableau, and when Appellants failed to appear at the hearing, Appellants failed to overcome Siblings' objections. According to Siblings, the district court acted correctly and within its discretion when it sustained the objections and disallowed disputed and unsupported expenses. Siblings further argue that Executor's claims against the successions were not properly documented in annual accountings or sworn detailed descriptive lists and are now prescribed[6] or barred under the "Dead Man's Statute," La. R.S. 13:3721.[7] They contend that the claims for home repairs, renovations, property taxes, and income taxes while the parties' parents were living are improper claims. They further oppose expenses related to the Livaccari Drive property, which Executor failed to maintain, after that property was damaged in Hurricane Katrina

---

[6] Prescription was not specifically pled in an exception below and was not addressed by the trial court. According to the reasons for judgment, it was mentioned for the first time in Appellees' post-trial memorandum, and the district court did not address it or rule on it. We lack authority to address it for the first time on appeal on our own motion in the absence of an exception of prescription. *See* La. C.C.P. art. 927.

[7] Under La. R.S. 13:3721, "[p]arol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased" the claimant takes certain actions enumerated in the statute. "The purpose of the 'Dead Man's Statute' is to protect the estate of decedents, their representatives, and heirs against stale and unfounded claims which might have been refuted or disproved by the testimony of the deceased were he living." *Halpern v. Jonathan Ferrara Gallery, Inc.*, 19-1066, p. 6 (La. App. 4 Cir. 12/30/20), 365 So.3d 568, 574 (quotation omitted).

and was thereafter neglected, fell into further disrepair and blight, and ultimately, was demolished by order of St. Bernard Parish Government.

Our review of the expenses disputed on appeal reveals the following. Both tableaus list attorney's fees and court costs, which are undated and fail to specify what legal service was provided or what court cost was incurred. In both tableaus, certain legal fees were demarcated as "estimated." "It has long been recognized in Louisiana law that an executor of a succession may obtain an attorney to aid in the carrying out of the executor's duties and to defend the succession against adverse claims made against it." *Succession of Fanz*, 16-0180, p. 19 (La. App. 4 Cir. 12/16/16), 208 So.3d 422, 434 (quotation omitted). "This Court has held that fees for legal representation may be charged to the succession where such representation is for the benefit of the estate rather than for the personal benefit of the executor." *Id.* This Court has characterized "a list of 'Legal Fees' with undocumented monthly amounts for various years" as "uncorroborated and unsubstantiated." *Succession of Sporl* ("*Sporl II*"), 04-1373, p. 13 (La. App. 4 Cir. 4/6/05), 900 So.2d 1054, 1062. As we explained:

> the reasonableness of an attorney fee award is always subject to court scrutiny. . . . The succession representative who seeks court approval to pay such fees must, however, meet a threshold burden of establishing the basis and amount of the fees, just as she would be required to do to obtain court approval to pay other debts or charges of the succession.

*Id.*, 04-1373, p. 13, 900 So.2d at 1062-63 (citing *Succession of McLean*, 26,566, pp. 19-20 (La. App. 2 Cir. 3/1/95), 651 So.2d 920, 929).

Executor's sister, Appellee Joel Forjet, testified that Executor had not provided her with any documentation of particular legal expenses or costs, despite her repeated requests. The district court's judgment homologated payment of $900.00 in Clerk of Court costs, which – according to the reasons for judgment – is the amount to which Siblings conceded they do not object.

As to the claimed loan to Mother, arguments in Appellants' brief are inconsistent with the claims listed in the tableaus. The brief references a "Hibernia National Bank loan" of $191,465.08 while also arguing that is the loan from Executor to Mother for the purchase of the Jade Court property. Both tableaus, however, identify an undated "Jade Court Cashier's Check" from Hibernia National Bank in the amount of $191,465.08. The tableau for Mother's estate separately lists a "Real Estate loan" in the amount of $135,500.00 made to 321 Jade, LLC. No documentation or evidence of either alleged loan is contained within this Court's record. Joel Forjet testified that the Jade Court property was paid for with insurance proceeds from the Livaccari Drive property damage claim and that Executor contributed additional funds with the expectation that he would live in the Jade Court property.

Regarding maintenance and repairs of the Livaccari Drive property, both tableaus contain numerous undated entries regarding "Livaccari" containing no description of the service provided or purpose of the expense. Joel Forjet testified to her understanding that Mother had usufruct over the property in Father's estate and lived in the Livaccari Drive property along with Executor until Hurricane

Katrina in 2005. As Siblings point out, the Livaccari Drive property was damaged in Hurricane Katrina. Thereafter, Executor failed to repair or maintain the property to the point where St. Bernard Parish imposed numerous building ordinance violations against the property relative to dangerous structures and sanitation. As testified to by Clay Dillon, Chief Compliance Inspector for the St. Bernard Parish Government, the parish ordered the Livaccari Drive property's demolition, which was accomplished in March 2023 at a cost of $14,200.00. Siblings conceded to a total of $25,228.50 in grass cutting and maintenance expenses for the succession properties.

Executor claims he is due $1,838.50 in reimbursement for undated expenses to "Delta Fence" for the Jade Court property. As to property taxes, Executor claimed reimbursement of $68,127.86 in property taxes for the Jade Court property. Joel Forjet testified that both Appellants have lived in the Jade Court property since its purchase, and the district court recognized the need to reserve this issue for future separate trial to determine any applicable offset relative to co-owner status. Executor complains about an additional $1,628.57 in various property taxes paid to Sheriff Jack A. Stephens, seemingly associated with St. Bernard Parish properties. Joel Forjet testified that she paid the 2021 property taxes for the Jade Court property and the 2022 taxes were unpaid. She further stated that she redeemed the property for unpaid taxes for the years 2015, 2016, and 2017, and Petrina Meyers reimbursed her for approximately $16,000. Joel Forjet also testified that Petrina Meyers paid unpaid property taxes for the St. Bernard Parish

properties. Siblings conceded to claims of property taxes in the amount of $7,302.38 on the Livaccari Drive property and $3,213.40 on the Urquhart property.

Appellants also argue their entitlement to reimbursement of $11,842.00 in income taxes paid. In the tableaus, Executor claims to have paid income taxes on both parents' behalf in 1995 and 1996 and on Mother's behalf between 2001 and 2004. We find little guidance in Appellants' argument concerning *Succession of Vatter*, 192 La. 657, 188 So. 732 (1939), wherein a provisional accounting was filed showing that attorneys for an executor advanced money for installments of income tax. We see no support in the law for construing income taxes during the decedents' lifetimes as estate debts. Joel Forjet testified that both parents' had sufficient funds to satisfy such payments, not only from Social Security income, but also through their interests in Randazzo Properties and "Toca lease payments" they received. She also explained in her testimony her doubts, on the whole, that outstanding loans existed between Executor and Mother, or that there was any expectation of repayment, because Mother "never left anything outstanding with any of us."

We acknowledge, as a general matter, that Article 3244 imposes a presumption of validity on claims listed in the tableau of distribution. Even so, this Circuit has long recognized lower courts' authority to decline payment of disputed claims, which are within the executor's power to substantiate, where he has failed to come forward with supporting proof. *See Meier*, 204 So.2d at 797. Moreover, this Court explicitly held that allegations contained within a tableau of distribution

are not evidence. *Sporl I*, 03-1084, pp. 9-10, 859 So.2d at 737. In *Sporl I*, the record on appeal contained the co-executors' allegations of debts and the opposing heir's objections, but contained neither a transcript of the proceedings nor any evidence supporting the co-executors' claims that the disputed debts existed or were owed by the succession. *Id.*, 03-1084, p. 9, 859 So.2d at 737. In such a posture, this Court found no abuse of discretion or manifest error in refusing to homologate the tableau. *Id.*, 03-1084, p. 10, 859 So.2d at 737-38.

Analogous circumstances are present here. Siblings opposed the tableaus of distribution through their motion to traverse. Executor was ordered removed as succession representative, which judgment he did not appeal. Executor did not appear for the hearing on the motion to traverse, did not testify, and did not offer any evidence supporting that the disputed debts existed or were owed by the succession. Siblings appeared and testified about their objections to the claimed debts, though evidently they conceded to some of the expenses, which were the same expenses the district court ordered homologated.

Furthermore, Appellants opted to designate the record on appeal, as a result of which a complete record of the proceedings below is not before this Court. La. C.C.P. art. 2128 permits an appellant to designate the record and limit it to such portions that he desires to constitute the record on appeal. However, "[t]he inadequacy of the record, if any, is imputable to the appellant." *Garden Park Ests. Owners Ass'n, Inc. v. Nuss*, 16-252, p. 3 (La. App. 5 Cir. 12/7/16), 207 So.3d 1181, 1183. "The reviewing court must presume that the trial court judgment is correct

and supported by sufficient competent evidence when a designated record is inadequate for a review of the matter at issue." *Id.* To the extent that there is anything missing from the record of the proceedings below that would support Appellants' claims on appeal, Appellants have made no efforts to correct the deficiency or ensure that a complete record is before this Court.

The district court's reasons for judgment make plain that it approved only the expenses to which the other heirs did not object. It reasoned:

> even when the executor does not appear to defend the objection to some of the charges, if the party objecting cannot prove the invalidity of the charges, even those incurred over 20 years prior, the charges are deemed correct. Is this the rule of law when the executor claims he is owed over a half million dollars from the successions but he has never filed a claim as a creditor? How does a party defend against charges listed with a name and an amount, but no date and no location of property? How does a party defend against a claim for payment of credit card debt for "miscellaneous items," … without even a year much less a date? The only defense would appear to be an objection, as movers have done, pointing out these obvious facts to the Court.
>    …
> Any prudent administrator, including [Executor] if he was acting as such, would challenge and oppose charges and expenses presented in the form and substance of much of what is included in the tableaus before the Court. Can [Executor] merely dump his 20 plus year old check book register into a Tableau of Distribution and expect the presumption of validity to apply and get payment?
>
> The irony is, there are no debts of either succession. This is all about reimbursement of money paid out supposedly for legitimate expenses as defined in Article 1415.
>
> This Court will and does take the position that the presumption of validity mentioned in Article 3244 must and should refer to properly filed and documented claims

for expenses of death or administrative expenses as defined by the law. Other than those conceded by the movers, the items listed in the tableaus do not meet that standard.

We cannot discern any legal error on our review of this matter. The record lodged in this Court reveals a reasonable factual basis for approving only those undisputed expenses at this juncture. Considering the particular, unique circumstances occurring in this case, we cannot say the district court's decision to deny the remaining claimed expenses was manifestly erroneous or clearly wrong.[8]

**Award of Costs Against Executor**

Appellants contend that the district court erred as a matter of law in assessing all costs against Executor on the traversal proceedings. According to their argument, because the judgment approved some of the expenses, Executor was successful on some of his claims and should have been assessed with costs. We disagree.

Louisiana Code of Civil Procedure Article 1920 governs assessment of costs, and provides:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

A district court is afforded great discretion in assessing costs, and such an award is generally only disturbed upon a showing that the court abused its

---

[8] Nothing in this opinion should be construed to preclude any future-appointed executor from petitioning to homologate an amended, and properly supported, tableau of distribution or any opposing party from filing an exception of prescription or opposition pursuant to the Dead Man's Statute, La. R.S. 13:3721.

discretion. *Butler v. Louisiana Mut. Med. Ins. Co.*, 15-1191, p. 3 (La. App. 4 Cir. 5/25/16), 195 So.3d 570, 573. "[W]hile the 'abuse of discretion standard is highly deferential, … a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law.' " *Barre-Williams v. Ware*, 20-0665, p. 4 (La. App. 4 Cir. 4/28/21), 365 So.3d 760, 768 (quotation omitted). Although, generally, the party cast in judgment should be taxed with costs, the district court has wide discretion to assess costs in any equitable manner and against any party in any proportion it finds equitable, even against the party who prevailed on the merits. *Lakewood Prop. Owners' Ass'n v. Smith*, 14-1376, p. 25 (La. App. 4 Cir. 12/23/15), 183 So.3d 780, 795. *See also Williams v. Leeper*, 21-1177, p. 7 (La. App. 1 Cir. 4/8/22), 341 So.3d 850, 856 (collecting cases). As some courts have explained, "a prevailing party may be taxed with costs if that party in some way incurred additional costs pointlessly or engaged in other conduct which would equitably justify the prevailing party being assessed." *Butler*, 15-1191, pp. 4-5, 195 So.3d at 574 (internal quotations omitted).

The record reveals longstanding delays and animosity among the heirs, culminating in Executor's removal. Siblings' resounding complaint remains that Executor failed to provide any accounting in the twenty-year period while the succession remained open, such that the expenses in dispute are largely unsubstantiated. Moreover, as Siblings point out, Executor failed to appear for the hearing on the motion to traverse and thus avoided the ability to be questioned on the nature of these expenses. The district could have reasonably determined that

Executor engaged in conduct to incur the costs of the traversal proceedings. Under the circumstances revealed in the record, we find no abuse of discretion in casting Executor with costs associated with the motion to traverse.

## CONCLUSION

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

**AFFIRMED**