UARMSTRONG, Judge.
We granted certiorari to consider the correctness of the trial court’s judgment on the plaintiffs’ motion to compel answers to interrogatories and production of documents. For the following reasons we now reverse.
These consolidated suits involving approximately 1,500 plaintiffs arise out of collision between a truck and a train on October 22, 1990. The driver of the truck was hauling barrels of a pesticide which spilled, requiring the evacuation of a large number of the surrounding residents. The truck was owned by defendant Deaton, Inc. and was being driven at the time of the accident by John Hill. A breathalyzer test given to Hill by police registered .215 blood level alcohol. Hill was named a defendant as were several others: The Insurance Company of the State of Pennsylvania, Deaton’s insurer; Norfolk and Southern Railroad and its subsidiary, Alabama Great Southern Railroad and New Orleans Terminal Company, owners of the train, tracks and employer of the operator of the train; and the State of Louisiana Through the Department of Transportation and Development.
|2The plaintiffs instituted this action seeking, among other damages, exemplary damages pursuant to La. C.C. art. 2315.4, for injuries allegedly caused by the wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the injuries. The plaintiffs propounded to Deaton twenty-four interrogatories and requests for production of a number of documents. The plaintiffs were not satisfied with Deaton’s responses and filed a motion to compel. The trial court denied the motion to compel as to three interrogatories, granted in part as to two, and found one to be moot. As to the requests for production of documents, the trial court denied seven, granted one without limitation, and granted two in part. The plaintiffs complain of all the trial court’s limitations and denials.
La. C.C.P. art. 1422 provides that, unless otherwise limited by a court in accordance with discovery provisions, a party may obtain discovery:
[Rjegarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having *486 knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to discovery of admissible evidence.
Generally, the discovery articles, La. C.C.P. arts. 1422-1425, permit discovery “regarding any matter not privileged, which is relevant to the subject matter of the action.” Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125 (La.1983). The Hodges court set forth the basic objectives of the Louisiana discovery process as follows:
[3(1) [T]o afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. The discovery statutes are to be liberally and broadly construed to achieve its intended objectives. (Citations omitted).
As a general rule, a trial court has broad discretion in handling discovery matters. Rullan v. Adobbati, 96-0848 (La.App. 4 Cir. 5/8/96), 674 So.2d 417.
In the instant case, the trial court made a number of discovery rulings as to the motion to compel interrogatories and produce documents. The court found these discovery requests overly broad, burdensome, invasive and “more designed to harass than to produce evidence.”
Interrogatory No. 2: In this interrogatory the plaintiffs sought the name, address, social security number and office address of all officers and directors for the past ten years. Plaintiffs also sought the offices held and dates of tenure. Deaton objected on the grounds that the information was irrelevant and not calculated to lead to discoverable information and was overly broad and burdensome. Plaintiff argued to the court that Deaton’s defense to this accident is that Hill, the truck driver, violated all of its internal rules and regulations and, thus it was necessary to depose these officers and directors to find out what the management policies of Deaton were relative to this issue. Deaton argues that these officers and directors are removed from the day-to-day operations of the business and that Safety Directors and Risk Managers already had been deposed, the Risk Managers up to twenty years prior to the accident. Deaton argued that it was an attempt to harass it. The trial court denied the motion to compel Deaton to answer this interrogatory.
LWe believe this information is relevant— the officers and directors set company policy. The information they possess may assist the plaintiffs, who will surely seek to prove a causal connection between a lax company policy regarding drivers and this accident. We are only talking about officers and directors for the last ten years. Deaton is ordered to answer plaintiffs’ interrogatory number two, with the limitation that the social security numbers of these officers and directors need not be divulged.
Interrogatories No. 11 & 12: The plaintiffs sought the name, address, and social security number of every person employed by Deaton or its parent companies involved in obtaining insurance covering the accident. They also sought the name, address, company and position of every agent, broker or insurance company employee with whom Deaton dealt with to procure the above insurance. Plaintiffs argued to the trial court that they wanted to find out what information was submitted to insurance companies by Deaton in the way of accident records and accident histories. They also want the names of these insurance company employees so they can obtain similar information. Deaton argued that perhaps the plaintiffs ought to depose the insurance company employees. The trial court denied the motion to compel as to both interrogatories.
We believe this information is relevant or could lead to relevant information and is not over burdensome. Plaintiffs simply ask for the names of persons involved with the procuring of the insurance policies covering the accident forming the basis of this action so *487 they can depose them. Again, with the exception of the social security numbers of these persons, Deaton is ordered to answer the interrogatories number eleven and twelve.
_[6Interrogatory No. Ik: In this interrogatory, plaintiffs asked whether any claim had ever been made against Deaton for damages resulting from a collision with one of its motor vehicles in which it was alleged that the driver was intoxicated or driving under the influence of alcohol or drugs. Plaintiffs argued before the trial court that this was a very specific request. Deaton argued it was not reasonably connected to the time and place of the accident. The trial court granted the motion to compel in part, ordering Deaton to answer as to any such claims for the year of the accident, 1990, and three years preceding the accident.
We believe the trial court unduly restricted the interrogatory. If Deaton had one claim per year for twenty years preceding the accident in question relating to accidents where it was alleged drivers were intoxicated, this would be relevant to the plaintiffs’ claims. Deaton is ordered to answer this interrogatory with information dating back, including the year of the accident, at least twenty years. Claims relating to accidents after the date of the accident in question would not be relevant.
Interrogatory No. 15: In this interrogatory the plaintiffs ask, as to any claims for damages resulting from collisions where it was alleged the driver was intoxicated, etc., the date of the claim, date of the incident, location of the incident, name and address of the claimant, name and address of the claimant’s attorney, name and address of the driver, the case caption, number and court, if any, summary of facts as alleged by the claimant, and the current status of the claim. Deaton argued that the question was too broad and, as to claims for accidents after the date of the accident in question, not probative. The trial court granted the motion to compel in part, ordering Deaton to answer as to any ^accidents occurring in 1990, the year of the accident, and for three years preceding the accident.
We believe the trial court should have granted the motion to compel Deaton to answer this interrogatory with information dating back, including the year of the accident, at least twenty years. It is so ordered.
Interrogatory No. 21: In this interrogatory plaintiffs sought the name, home address, Social Security number and dates of employment of every safety director of Dea-ton from 1979 to the present. Counsel for plaintiffs informed the trial court that “[This] issue is moot because we have deposed the Safety Directors. I ask for the identification of Deaton’s Safety Directors, and they provided those names, and we have deposed them.” In its judgment the trial court stated that the motion to compel as to this interrogatory was moot. However, plaintiffs now raise this as an assignment of error, claiming Deaton did not provide names of all the safety directors from 1979 forward. Because counsel for plaintiffs represented to the trial court that this issue was moot, the trial court did not err in finding it moot. We will not consider this assignment of error.
Request for Production No. 2: In this request the plaintiffs sought Deaton’s quarterly income statements and balance sheets, audited financial statements, and SEC form 10-K annual reports, all from 1979 to present. Plaintiffs argued that they needed this information because Deaton was an integral part of Old Dominion (another trucking company) at the time of the accident in question and they needed to know Deaton’s full financial picture in order to make their case for punitive damages. Deaton argued that the information was irrelevant, not calculated to lead to discoverable evidence and overbur-densome. The trial court denied the motion to compel as to this request for production.
|7Since this is a punitive damage ease the financial condition of Deaton is extremely relevant. Deaton is ordered to produce these documents.
Request for Production No. 3: In this request the plaintiffs sought a certified copy of the articles of incorporation of Deaton, Inc., together with any amendments thereto. Plaintiffs argued that Deaton is an Alabama corporation and it was “easier attainable” by *488 Deaton than the plaintiffs. In its opposition to the motion to compel, Deaton made the same argument as to request number two— irrelevant, not calculated to lead to discoverable evidence and overburdensome. The trial court denied the motion to compel production of these documents.
The plaintiffs claim the articles of incorporation may contain names of individuals who may have knowledge regarding the incident in question or have knowledge regarding the financial resources or financial status of Dea-ton during the last decade. We agree. Dea-ton is ordered to produce these documents.
Request for Production No. U: In this request, the plaintiffs asked for “the entire personnel file of John K. Hill, as required by the Federal Motor Carrier Safety Regulation.” Deaton provided what it represented to the trial court as “ninety percent of what’s in his file,” but asserted an objection that any further production for material would be precluded based on privilege, work product, confidentiality and Hill’s privacy rights. Counsel for plaintiffs asked if Deaton could submit Hill’s personnel file for the court’s review. Then Deaton informed the court that “[t]hey have everything other than the blood testing issue we addressed earlier. They have the whole file.” The trial court ordered Deaton to produce all of the personnel file of truck driver John Hill not protected by privilege. However, the court specifically ruled that the blood test of John HiUjgobtained by counsel for Deaton and its insurer and made a part of Hill’s personnel file was not to be produced as part of his personnel file.
Privileged matter is not discoverable. La. C.C.P. art. 1422. On remand the trial court is directed to inspect Hill’s personnel file and excise any privileged material and turn over the rest of the file to the plaintiffs. This ruling does not include any blood test results. We 1^011 discuss the issues concerning the blood test(s) below.
Request for Production No. 7: The plaintiffs sought any documents submitted by Deaton to any insurer, agent, or broker for the purpose of applying for or obtaining liability insurance covering operation of its motor vehicles. Plaintiffs argued they wanted this information because Deaton may have applied for insurance and been turned down. The trial court denied the motion to compel the production of these documents.
In its memorandum in opposition to the motion to compel, Deaton argued that insurance packages are put together each year and they would be impossible to reconstruct. Deaton argued that it was impossible to compile “all documents submitted to any insured, agent,....” Deaton is ordered to produce any information in its possession which it had submitted to procure insurance. If Deaton applies for insurance yearly, it should know the types of information it submits each year. Whatever Deaton has, it should produce.
Request for Production 8: The plaintiffs sought “[a]ll annual reports filed with the ICC (Form M) from 1979 to the present.” In its opposition, Deaton argued that the ICC only requires it to maintain these records for three years. It offered to provide the ICC forms for the last three years. The trial court granted plaintiffs’ motion to compel in part, ordering three years of reports.
JgWe note that, while Deaton stated the ICC only required it to maintain the records for three years, it did not represent it only had the records for three years. We see no reason why Deaton should not produce all annual reports it has in its possession from the present back to, and including 1979. It is so ordered.
Request for Production No. H: The plaintiffs sought all motor carrier accident reports (Form MCS 50T) filed with any federal or state agency from 1979 to the present. In its opposition Deaton submits that since March 1, 1993, the Louisiana State Police, not the freight carrier, is required to file the Form MCS 50T with the Department of Transportation. Deaton claims it would be extremely burdensome to reconstruct the reports. The trial court ordered the production of the Form(s) MCS 50T for the year of the accident in the instant ease, plus the three years preceding the accident.
Plaintiffs seek these forms to discover information regarding the propriety of Dea-ton’s supervision over their drivers and ade- *489 quaey or inadequacy thereof. They also claim it will allow them to discover other incidents where Deaton drivers were operating vehicles while intoxicated and Deaton’s knowledge of the frequency of these accidents, if any. We believe the plaintiffs are entitled to the information as requested, from 1979 through the present, and order Deaton to produce it.
Request for Production No. 20: The plaintiffs sought production of the minutes of all Deaton board of directors and/or shareholders meetings from 1979 to the present. Plaintiffs argued to the trial court that through this material they were hoping to discover information concerning the financial interrelationship between Old Dominion Freight Lines and Deaton, as well as Dea-ton’s financial earnings in general. They also claim the minutes might have references to truck | ipdriver John Hill’s accident and this information may lead to the discovery of information not known by the plaintiffs. Deaton calls this a fishing expedition and says to comply would be extremely burdensome. The trial court denied the request.
We believe the information sought is relevant and/or will lead to the discovery of admissible evidence. Deaton is ordered to comply with this request for production.
Request for Production No. 21: Plaintiffs sought production of records of all loans from Old Dominion Freight Lines to Deaton from 1979 to present. Again, citing the interrelationship between Old Dominion and Deaton, plaintiffs need this information for recovery of compensatory and punitive damages. Deaton claims Deaton and Old Dominion are separate entities. The trial court denied the motion to compel production of these documents.
If these Deaton records exist, they may tend to rebut the assertions that Deaton and Old Dominion are completely separate entities. Deaton is ordered to produce these documents.
Request for Production No. 22: Plaintiffs sought all federal and state income tax returns filed by or on behalf of Deaton from 1979 to the present. Plaintiffs argue this information on Deaton’s income is relevant for purposes of assessing punitive damages. Deaton counters that this request is overly broad. The trial court denied the motion to compel as to this request.
This information is relevant to the issue of punitive damages. Deaton is ordered to comply with this request for production.
Request for Production No. 2Jf. By request number twenty-four, plaintiffs sought all medical records of truck driver John Hill for treatment after the October | n22, 1990 collision. The trial court ordered Deaton to comply with the request with the exception that the blood test was excluded because it was privileged. This is the only complaint by the plaintiffs as to this aspect of the court’s ruling on this request. We address the blood test issue below.

Blood Test Results:

In requests for production numbers four and twenty-four, directly or indirectly, the plaintiffs sought results of any blood tests performed on Hill at the direction of his attorney, or results of blood tests contained in his personnel or medical records. The trial court found that this information was privileged, protected by the attorney-client privilege. We disagree.
Counsel for defendants Deaton and the Insurance Company of the State of Pennsylvania stated at the hearing on the motion to compel that on the night of the accident, he and Franz Zibilich, who is criminal counsel for truck driver John Hill, accompanied Hill to a private hospital and had his blood tested. This was after Hill had gotten out of jail, having been arrested for driving while intoxicated. A breathalyzer test administered by police registered .215 blood level alcohol content, more than twice the legal limit. Counsel for Deaton stated that he asked for the test and paid for it with his own funds. He argued that it was his work product and, thus, not discoverable. He did not argue that the test results were privileged. Counsel for plaintiffs argued that the defendants would attack the reliability of the breathalyzer test administered by police. Since the plaintiffs’ claims for exemplary damages under La. C.C. art. 2315.4 rest on proof that *490 Hill was intoxicated at the time of the accident, the plaintiffs sought the blood test results to buttress their case. Even though the blood test was done perhaps as many as eleven hours after the accident, it might be possible to determine what his | ^blood alcohol level would have been at the time of the accident based on an estimated rate the alcohol had been metabolized by Hill’s body to get to the level it was at the time the blood test was administered.
The trial court found the blood test results were privileged and not discoverable. Privileged matter is not discoverable. La. C.C.P. art. 1422; Hodges, supra. Presumably, when the trial court based its denial of the motion to compel production of Hill’s blood test results on the grounds it was privileged, it meant lawyer-client privilege, not the health care provider-patient privilege.[1] A privilege must be asserted by one entitled to claim it. We assume for the sake of argument that counsel for Deaton, who by his own admission does not represent Hill and has never represented Hill, but accompanied Hill to the hospital for the test and paid for it, was qualified to claim the privilege.
La. C.E. art. 506 sets forth the general lawyer-client privilege, in pertinent part, as follows:
B. General rule of privilege. A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication,....
Official Comment (i) to La. C.E. art. 506 clarifies that privileged “communications” include only what the client tells the lawyer, what the lawyer tells the client, and perceptions and observations of the lawyer. The comment makes clear that the privilege does not extend to broadly cover any and all information that the lawyer may have gotten by reason of his being legal advisor |13to the client. Indeed, the limitation of the privilege is so clear that La. C.E. art. 509 was included in the privilege section of the Code of Evidence to ensure that, although not covered by the lawyer-client privilege, other information could still be covered by the work-product rule of La. C.C. P. art. 1424.
Even assuming that there was a lawyer-client relationship between Hill and counsel for Deaton, it would not extend to cover the blood test results. This was not a communication from Hill to counsel for Deaton, or Hill’s criminal attorney, or from Hill to them. Nor could the blood test results themselves be considered a perception or observation made by the lawyer. Therefore, the blood test results were not protected by the lawyer-client privilege.
La. C.C.P. art. 1424 protects against the production or inspection of any writing obtained by an adverse party, attorney, or agent in anticipation of litigation “unless [the court is] satisfied that denial of production or inspection will unfairly prejudice the party seeking the production of inspection in preparing his claim or defense or ivill cause him undue hardship or injustice.” As previously stressed, this is an action for, among other damages, exemplary damages related to alleged drunk driving by Hill. The strongest evidence of Hill’s intoxicated condition at the time of the accident is the breathalyzer test results obtained by the police. The plaintiffs have this evidence. So do the defendants. However, this test evidence most certainly will be attacked by the defendants. It is impossible for the plaintiffs to now get other scientific evidence as to Hill’s blood alcohol level at, or near, the time of the accident. Deaton has this information. The inability of the plaintiffs to get other scientific evidence bearing on the issue will unfairly prejudice the plaintiffs and cause them undue hardship and injustice. For these reasons, *491 we find that these blood test results are not protected as work product under La. C.C.P. 1 i4art. 1424. Deaton is ordered to produce any all information as to any postaccident tests performed on Hill’s blood as requested by the plaintiffs in requests for production numbers four (4) and twenty-four (24).
For the foregoing reasons, we grant the relators’ writ application and affirm the judgment of the trial court in part, reverse it in part, amend it in part, and remand for further proceedings in accordance with this decision.

AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; REMANDED.

LOBRANO, J., concurs in part and dissents in part.

. The plaintiffs could have obtained the blood test results directly from Hill or the hospital itself, assuming they knew the name of the hospital where the test had been administered. Hill could not have asserted a privilege to prevent such discovery by the plaintiffs. See La. C.E. art. 510(B)(2)(i); La. R.S. 13:3734(C); Jackson v. Dendy, 93-0905 (La.App. 1st Cir. 6/24/94), 638 So.2d 1182.