734 So.2d 119 (1999)
SUCCESSION OF Abraham G. MANHEIM.
Liquidation of Manheim Antique Galleries, An In Commendam Partnership.
Nos. 98-CA-2051, 98-CA-2052.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
Rehearing Denied May 28, 1999.
*121 Leon H. Rittenberg, Jr., Beverly Klundt Baudouin, Baldwin & Haspel, L.L.C., New Orleans, and I. Jay Krieger, Krieger, Krieger & Levkowicz, New Orleans, Attorneys for Appellant, Gayle Manheim Cohen.
Alan H. Goodman, Thomas M. Benjamin, Lemle & Kelleher, L.L.P., New Orleans, Attorneys for Appellee, Max Nathan, Jr., Appearing in his Capacity as Testamentary Executor of the Succession of Abraham G. Manheim.
David F. Edwards, R. Patrick Vance, Mark W. Mercante, Jones, Walker, Waechter, Poitevent, Carriere & Denegre, L.L.P., New Orleans, Attorneys for Edward L. Weitz and Bradford H. Weitz, Co-Executors of the Succession of Rose Manheim Hirsch.
M.H. Gertler, Gertler, Gertler, Vincent & Plotkin, L.L.P., New Orleans, Attorney for Appellees, Ida Manheim Zachary and Heather Myden.
Court composed of Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY and Judge Pro Tempore JAMES A. GRAY II.
MURRAY, Judge.
These appeals arise from judgments rendered in two consolidated cases, one involving the succession of Abraham G. Manheim, and the other the liquidation of the Manheim Antique Galleries (MAG) partnership. For the following reasons, we affirm the judgment homologating the amended fourth tableau of distribution in appeal No. 98-CA-2051, and reverse the judgment maintaining an exception of prematurity in appeal No. 98-CA-2052.

FACTUAL BACKGROUND:
To properly analyze the issues in these consolidated cases, a detailed factual history is necessary. Before his death on February 11, 1995, Abraham G. Manheim was a general partner in the MAG partnership, a partnership in commendam. At the time of its inception, Abe's[1] sister, Rose Manheim Hirsch, and his brother, Jacob (Jack) Manheim, were also general partners. The partners in commendam were the general partners' children and grandchildren, with some of the partnerships in commendam being in the form of trusts. In 1986, the partnership redeemed Jack's general partnership interest and his children's in commendam partnership interests. In 1993, Abe purchased the in commendam interests of Rose's grandchildren's trusts. At that point, and at the time of his death, Abe owned 47.93 percent of the partnership and Rose owned 33.32 percent. The partners in commendam were Abe's three daughters and one granddaughter. Two of the daughters, Gayle Manheim Cohen and Joan Manheim Cloud, each owned a 6.26 percent interest. Ida Manheim Zachary, owned a 4.69 percent interest, and the granddaughter, Heather Zachary Myden, owned a 1.56 percent interest. Rose died on September 16, 1993, leaving Abe as the sole general partner.
Shortly before his death in 1995, Abe executed a codicil to his will bequeathing his general partnership interest in trust, naming his daughter, Ida, and his grandson, Jonathan Cohen, as co-trustees. He named his three daughters, Gayle, Joan and Ida, as beneficiaries of the trust. The codicil also provided that if the co-trustees could not agree, Abe's widow, Audrey, would act as a tie-breaker.
Abe's succession was opened on or about February 16, 1995, at which time Max Nathan was appointed testamentary executor of Abe's will. Early in the administration *122 of the succession, Gayle raised objections to several provisions of her father's will and to Mr. Nathan's administration of the succession. She challenged the settlement of her father's widow's marital portion, and the payment of fees to the executor and his attorney.[2] After objecting to the amount of Audrey's marital portion, Gayle then moved to have Audrey removed as the "tie-breaker trustee," should the co-trustees of the partnership trust not agree.[3]
In August of 1997, Gayle filed a separate lawsuit seeking to have the MAG partnership liquidated. She claimed that the partnership terminated upon the death of her father, the sole remaining general partner, because the partners in commendam had not agreed, in writing within ninety days of his death, to continue the partnership.
Mr. Nathan and Ida each filed exceptions to the liquidation petition. Mr. Nathan excepted on the grounds that Gayle was using a summary proceeding without authority, and that she had no cause of action to seek a writ of quo warranto against him. Ida claimed that Gayle's action was premature and that she had no cause of action for the entire suit.
The trial court sustained Mr. Nathan's exception as to the writ of quo warranto and unauthorized use of summary proceeding, and overruled Ida's exception of no cause of action as to the entire suit. It stayed the action pending the close of Abe's succession.[4]
Gayle moved for a new trial on the grounds that the liquidation should be by way of summary proceeding, and that it should not be stayed pending the conclusion of the succession proceedings. The trial court denied the motion for new trial, and Gayle applied for a supervisory writ. This Court granted Gayle's writ application in part, finding that the trial court erred in not granting Gayle leave to amend her petition, and in issuing the stay order.[5]
In January of 1998, Mr. Nathan filed a fourth tableau of distribution in which he sought to pay the fees billed by Lemle & Kelleher (Lemle) for representing him in his capacity as executor of Abe's estate. In February of 1998, he amended the fourth tableau of distribution to correct the dates and amount of the Lemle bill.
Gayle opposed the homologation of both tableaus. She then sought discovery of Lemle's attorney time sheets, and all correspondence and memoranda between Mr. Nathan's attorneys and Ida and/or Joan, and/or their counsel. Mr. Nathan moved to quash the subpoena duces tecum. The motion was denied, but the court noted that all documents produced were not to be disclosed to anyone outside the litigation. The court also recognized the joint defense privilege and ordered Mr. Nathan to prepare a log listing all documents not *123 produced. Gayle's writ application to this court was denied.
Gayle filed an amended petition for liquidation of the MAG partnership in January of 1998. Mr. Nathan, Ida and Joan each filed exceptions of prematurity, no cause of action and no right of action.
On April 23, 1998, judgment was entered dismissing Gayle's petition for liquidation as premature, overruling Mr. Nathan's exception of no cause of action, and sustaining the exceptions of no cause of action filed by Ida and Joan. On May 12, 1998, the trial court rendered judgment homologating the amended fourth tableau of distribution and authorizing Mr. Nathan to pay the fees billed by Lemle. Gayle has appealed both judgments.

DISCUSSION:

I. No. 98-CA-2051: Homologation of the Amended Tableau of Distribution

A. Gayle's Appeal
In her appeal of the judgment homologating the amended fourth tableau of distribution, Gayle assigns three errors by the trial court: 1) the court erred in homologating the tableau because the record does not support the fees billed by Lemle; 2) the court erred in refusing to require Mr. Nathan to produce certain communications based upon the joint defense; and 3) the court erred in refusing to admit certain documents on the basis that they pertained to offers of compromise.
The trial court erred in homologating the tableau of distribution and awarding fees and costs to Lemle in the amount of $173,962.83.
Our review of the trial court's decision homologating the tableau of distribution is subject to the manifest error rule, and must be affirmed if the record as a whole reveals that there is a reasonable factual basis for the decision. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 7 (La.2/20/95), 650 So.2d 757, 762.
Louisiana Code of Civil Procedure art. 3244 provides that "[t]he inclusion of the claim of a creditor of the succession in the succession representative's ... tableau of distribution creates a prima facie presumption of the validity of the claim; and the burden of proving the invalidity thereof shall be upon the person opposing it." See also, Succession of Dorand, 94-1627 (La.App. 4 Cir. 7/26/95), 659 So.2d 523. It, therefore, was Gayle's burden to prove that the fees that Lemle charged the succession were unreasonable.
Gayle contends that the Lemle fees were not reasonable either because they were excessive or because the services rendered did not benefit the succession. Although Gayle makes several specific allegations in support of this contention, we are not persuaded.
First, Gayle argues that Lemle's bill for work performed in connection with the liquidation litigation is excessive because it merely delayed that proceeding. Gayle initially filed her petition to liquidate the MAG partnership as a summary proceeding. When the trial court maintained the exception to the use of a summary proceeding, she filed the petition as an ordinary proceeding. Lemle, on behalf of the succession, excepted to the suit, and the court dismissed it as premature. There was nothing improper in the legal tactics employed by Lemle on behalf of the succession, and we cannot say that the trial court was manifestly erroneous in rejecting this argument.
Gayle also argues that Lemle's bill is excessive because it has charged the succession for time expended in trying to recover its previously charged legal fees. As attorneys for the executor, Lemle was required to defend Gayle's challenge to the executor's proposed tableau. That the only item on the particular tableau was Lemle's fees is irrelevant. As the trial court recognized, it would be illogical to require the succession to hire another firm to defend the tableau simply because the only item on the tableau was Lemle's fees.
*124 Gayle also complains that the amount of time charged with regard to discovery was unreasonable considering that this Court ordered Mr. Nathan to produce the documents requested. The record shows that Gayle, in an effort to support her opposition to an accounting filed by Mr. Nathan, requested accounting records from the MAG partnership. Mr. Nathan did not oppose the production of the documents. However, he requested that Gayle execute a confidentiality agreement before the records were produced. When the parties could not agree on the terms of the confidentiality agreement, the trial court denied Gayle's discovery request, and she applied to this Court for a supervisory writ, which was granted. Finding that Gayle was entitled to the discovery, this Court remanded the case to the trial court for approval of a confidentiality agreement. The fact that the records ultimately were ordered to be produced does not render Lemle's charge in connection with the discovery "battle" unreasonable.
Gayle also argues that the Lemle bill is unreasonable because of the firm's involvement in the attempt to purchase Rose Manheim Hirsch's interest in the MAG partnership. Negotiations to purchase this interest were begun before Abe's death; Mr. Nathan continued these negotiations on behalf of the succession thereafter. Because Mr. Nathan owed a fiduciary duty to her as one of Abe's heirs, Gayle argues that he should have ceased negotiations with Rose's executors once she objected. In support of this argument, Gayle offered the testimony of an expert who opined that Mr. Nathan should not have taken sides between the heirs, but should have petitioned the court to settle the matter.
Max Nathan and Alan Goodman, one of the Lemle attorneys representing the succession, testified that the negotiations with Rose's executors were an attempt to avoid litigation. Because of potential problems involving federal estate taxes, a tentative agreement was reached to use gallery inventory in lieu of cash to purchase Rose's interest. Mr. Nathan testified that he planned to apprise all heirs and legatees of any agreement before it was finalized. The tentative agreement fell through, however, and Rose's executors eventually filed suit.
Mr. Nathan's primary duty as executor was to protect the estate. Because Abe's interest in the MAG partnership was the estate's most valuable asset, it was not unreasonable for Mr. Nathan to attempt to avoid both litigation and as much tax liability as possible. That litigation ultimately ensued is irrelevant. We cannot say that the trial court was manifestly erroneous in accepting this explanation in determining that the Lemle charges in this regard were reasonable.
Gayle also contends that the Lemle bills indicate that the firm was representing Ida, and objects to the succession being charged for this representation. At the hearing, Mr. Goodman acknowledged that there were entries on his time sheets that indicated that he had contact with Ida. He denied, however, that he represented her. He testified that he dealt directly with Ida in her capacity as manager of the gallery in order to assemble the documents requested by Gayle in discovery, and in connection with the negotiation with Rose's executors.[6] This explanation is a reasonable one, and we cannot say that the trial court was manifestly erroneous in choosing to accept it.
Finally Gayle argues that Lemle should not be allowed to charge for its time expended in connection with the action to remove Audrey as the "tie-breaker" trustee because this motion was directed to Audrey not Max Nathan. However, as Mr. Goodman explained, Mr. Nathan, as executor of the estate, had a duty to see *125 that Abe's wishes were carried out. Abe specifically had designated Audrey for the position of tie-breaker. Therefore, it was proper for Mr. Nathan to oppose Gayle's attempt to have Audrey removed.
After reviewing the entire record, we conclude that the trial court was not manifestly erroneous in homologating the tableau of distribution and awarding to Lemle fees and costs of $173,963.83.

The trial court erred by refusing to require Mr. Nathan to produce communications based upon the joint defense privilege.
Gayle requested the production of all documents received from or forwarded to Ida or her counsel. She contends that these were necessary in order for her to prove her claim that a substantial portion of Lemle's fees were rendered at Ida's request for her benefit.
The Louisiana Code of Civil Procedure permits discovery of any matter not privileged. Adams v. Deaton, Inc., 97-0059 (La.App. 4 Cir. 4/9/97), 694 So.2d 482, writ granted, judgment vacated on other grounds, 97-1237 (La.6/30/97), 696 So.2d 997. Article 506 of the Louisiana Code of Evidence, lawyer-client privilege, provides in part:
B. A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
. . .
(3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
A trial court has broad discretion in ruling on pre-trial discovery, and an appeal court should not upset such a ruling absent an abuse of that discretion. Moak v. Illinois Central Railroad Co., 93-0783 (La.1/14/94), 631 So.2d 401. The trial court herein denied Mr. Nathan's motion to quash the subpoena duces tecum, issued a limited protective order to govern the items produced, and allowed Mr. Nathan to exercise a "joint defense" privilege on certain documents he claimed were exchanged between co-defendants.
As noted above, Alan Goodman testified that his contact with Ida was necessary to answer discovery relating to the galleries, and to attempt to negotiate an agreement with Rose's estate. In addition, Ida and Max Nathan are co-defendants in the liquidation proceeding; it is entirely reasonable that they and their counsel would exchange information in order to formulate a defense. Based on these facts, we cannot say that the trial court abused its vast discretion on this discovery issue.

The trial court erred in refusing to admit documents on the basis that they pertained to offers of compromise.
In her final assignment of error on the homologation issue, Gayle contends that the trial court erred in refusing to admit in evidence correspondence between her attorney and Mr. Goodman. Gayle argued that these letters would establish that Mr. Nathan offered to close the succession quickly only if she would agree to the payment of Mr. Goodman's fees. The trial court determined that the letters were offers of compromise, and refused to admit them. It did, however, allow Gayle to proffer the letters.
Louisiana Code of Evidence art. 408 A provides:
In a civil case, evidence of (1) furnishing or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising *126 or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article also does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations. This Article also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
Gayle argues that La.Code Evid. art. 408 A allows her to introduce the proffered letters for purposes other than proving liability or invalidity of a claim or its amount. She contends that they were offered to show that Max Nathan was "holding her hostage" by not closing the succession until she would agree to Mr. Goodman's fees.
Our review of the proffered letters confirms that they were offers of settlement exchanged during settlement negotiations. Even assuming, as Gayle alleges, the letters show that Mr. Nathan was "holding her hostage" in order to get her to agree to the payment of Lemle's fees, they are not relevant to the issue of whether those fees were reasonable and justified. We, therefore, find that the trial court did not abuse its discretion in excluding the correspondence between her attorney and Mr. Goodman.

B. Max Nathan's answer to the appeal
Mr. Nathan has answered Gayle's appeal, representing that it was error for the trial court not to award post-judgment legal interest on the judgment homologating the amended fourth tableau of distribution. We disagree.
Mr. Nathan argues that it is well-settled that interest should be awarded on attorney's fees from the date of judgment, citing authority in support of this argument. The cited cases involve awards of attorney's fees as provided by statute, and are not applicable to this case.[7] The trial court herein authorized payment of fees accrued by the succession; it did not make an award of attorney's fees pursuant to statute.
Although Mr. Nathan concedes that interest was not prayed for in the petition filing the amended fourth tableau of distribution, he argues that interest may be awarded pursuant to La.Code Civ. Proc. art. 1921, which provides that "the court shall award interest in the judgment as prayed for or as provided by law." The phrase "as provided by law" refers to tort claims to which interest attaches automatically. See La.Code Civ. Proc. art. 1921, 1990 Official Revision Comments. Clearly this is not a tort claim.
Finally, Mr. Nathan argues that Civil Code art. 2000 provides that when the object of performance is a sum of money, interest is owed on that amount "from the time it is due." In this case, the object of the executor's performance was to seek court approval to pay the bill for legal services rendered to the succession, and to pay the bill once the judgment homologating the tableau of distribution is final.
We find, therefore, that there is no basis for an award of interest on the Lemle bill. Interest was neither prayed for nor provided *127 by law on the judgment homologating the tableau of distribution.

II. Liquidation of the MAG Partnership
In her appeal of the judgment sustaining the exceptions to her liquidation claim, Gayle complains the trial court erred in granting the exception of prematurity filed on behalf of Max Nathan, and in sustaining Ida and Heather's exceptions of no cause of action.[8]
Initially, we note the April 23, 1998 judgment first dismissed Gayle's amended petition for liquidation as premature. The exception of prematurity was filed on behalf of Mr. Nathan. The judgment then addresses the remaining exceptions filed on behalf of Mr. Nathan, as well as the exceptions filed on behalf of Ida and Joan. However, once Gayle's amended petition was dismissed as premature, all pending exceptions to the amended petition also were dismissed, and should not have been addressed. Chachere v. Oratronics, Inc., 633 So.2d 353 (La.App. 3 Cir.1993). Therefore, the only issue properly before this Court is whether Gayle's amended petition for liquidation was premature; we pretermit discussion of Gayle's second assignment of error pertaining to the exceptions filed on behalf of Ida and Joan.
Gayle argues that the trial court erred in maintaining the exception of prematurity because the MAG partnership terminated on the day Abe Manheim, the sole remaining MAG general partner died.
Mr. Nathan counters that both the Civil Code and the MAG partnership articles support the trial court's determination that the MAG partnership did not terminate upon Abe's death.
Louisiana Civil Code art. 2837 defines a partnership in commendam as consisting of one or more general partners and one or more partners in commendam. Further, La. Civ.Code art. 2826 provides in part that "[a] partnership in commendam, however, terminates by ... the death... of the sole or any general partner unless the partnership is continued with the consent of the remaining general partners under a right to do so stated in the contract of partnership or if, within ninety days after such event [death], all the remaining partners agree in writing to continue the partnership and to the appointment of one or more general partners if necessary or desired."
Article 2818 provides that a partner ceases to be a member of the partnership upon his death. The comments to this article explain that prior to revision in 1980, the articles on partnership provided that a partnership would terminate upon the death of any partner. Under the new law, the partnership does not terminate "unless there results one of the causes for terminating a partnership set forth in Article 2826."
Mr. Nathan argues that these codal provisions are suppletive, and can be modified by agreement of the parties to a partnership. He contends that the MAG partnership articles, which provide that the partnership does not terminate upon the death of any partner, override the Code articles.
Mr. Nathan's argument would have merit did it not ignore the critical fact that the MAG partnership was a partnership in commendam. Because of the nature of the partnership in commendam and the manner in which such partnerships affect the interests of third parties, the codal articles relating to partnerships in commendam are construed as mandatory. See La. Civ.Code arts. 2836-2844.
That the requirements for partnerships in commendam are mandatory was recognized by the Third Circuit in Lovell v. Hallelujah, Inc., 451 So.2d 116 (La.App. 3 *128 Cir.), writ denied 458 So.2d 484 (La.1984). In Lovell the two remaining general partners had been removed by a vote of the partners in commendam. The trial court found that the departure of all general partners resulted in termination of the partnership. On appeal, the defendants argued that the dissolution could be avoided by an agreement of the partners in commendam. Affirming the trial court's decision, the Third Circuit held that the codal articles supported the position that the departure of all general partners resulted in dissolution of the partnership. The Court stated:
LSA-C.C. Art. 2836 makes the provisions of the other chapters of Title XI applicable to partnerships in commendam to the extent they are consistent with Chapter 7 on the partnership in commendam. Comment (b) of the official comments to that article provides that provisions of Chapter 7 should be construed as mandatory because of the nature of the partnership in commendam and the manner in which it affects the interests of third parties. In addition, the requirement of existence of at least one general partner may not be departed from (even temporarily) not only because it is mandatory but because it is essential as contained in the definition of a partnership in commendam. See Comment (b) to LSA-C.C. Art. 2802.
Supra, at 116.
Although it recognized that dissolution might not be desirable, the Court opined that the legislature was the proper forum to address this concern.
Ida argues that Lovell can be distinguished from the case at bar because it involved general partners who, rather than being deceased. were removed, and because it did not involve the interpretation of the partnership agreement. These, however, are distinctions without a difference.
The definition of a partnership in commendam requires that there be at least one general partner, without exception. La. Civ.Code art. 2837. In addition, the Lovell court specifically noted that it had no reason to interpret the partnership agreement because the Code required at least one general partner for a partnership in commendam to exist.
Mr. Nathan contends that, under the MAG partnership articles, specifically art. 11.2(b) and 15.3, he became a substitute general partner in MAG by virtue of his status as Abe's legal representative.
Article 11.2(b) of the MAG partnership agreement provides that the death of any partner shall not terminate the partnership. Rather, the partnership shall continue with the partners then being the surviving general partners, the surviving partners in commendam, the legal representative of the deceased partner, and his or her surviving spouse.
Art. 15.3 provides that the legal representative shall vote the entire interest of the deceased partner as long as a deceased partner's succession is under administration, and the successors have not been admitted to the partnership, or the interest of the deceased partners has not been purchased by the partnership or partners, supports this argument.
Louisiana Civil Code art. 2837, which is mandatory, provides that "[a] partnership in commendam consists of one or more general partners who have the powers, rights, and obligations of partners,...." (emphasis added.) A general partner, unlike a partner in commendam, may bind the partnership, participate in management or administration of the partnership, and conduct any business with third parties on behalf of the partnership. La. Civ.Code art. 2843.
Under the MAG partnership agreement, Mr. Nathan, as Abe Manheim's legal representative, does not have all of the powers, rights and obligations of a general partner. He merely has the right to vote Abe's interest as long as the succession is *129 under administration and the successors have not been admitted to the partnership or Abe's interest has not been purchased by the partnership or partners. We, therefore, must reject Mr. Nathan's argument that he was a substitute general partner.
Pursuant to Article 2826, the MAG partnership in commendam was terminated by the death of Abe Manheim unless it was continued with the consent of the remaining general partners or, unless, within ninety days of his death, all the remaining partners agreed in writing to continue the partnership and appoint at least one general partner.
After Abe died there were no remaining general partners to consent to its continuation. Nor is there any evidence that the remaining partners in commendam agreed in writing to continue the partnership and to appoint a new general partner. We find, therefore, that the MAG partnership terminated upon the death of Abraham Manheim. Consequently, Gayle's amended petition for liquidation is not premature. We reverse the judgment of the trial court dismissing her petition, and remand this matter for further proceedings.

CONCLUSION
For the foregoing reasons, we affirm the judgment in appeal No. 98-CA-2051 homologating the amended fourth tableau of distribution. We reverse the judgment in appeal No. 98-CA-2052 granting Nathan's exception of prematurity, and dismissing Gayle's amended petition for liquidation, and remand that matter for further proceedings.
JUDGMENT IN APPEAL NO. 98-CA-2051 AFFIRMED; JUDGMENT IN APPEAL NO. 98-CA-2052 REVERSED, AND REMANDED.
NOTES
[1] Hereafter we refer to Abraham Manheim, his widow, his sister and his daughters by their first names. This familiarity is prompted by an effort to avoid confusion and promote clarity rather than any disrespect.
[2] In an unpublished opinion (96-CA-1979), this Court reversed an award of executor's fees, finding that Mr. Nathan was bound by a previous agreement between Abe and himself in which Mr. Nathan agreed to a fee of 2% of the value of the estate. The trial court had found that no such agreement existed, and thus awarded fees based on an hourly rate. This Court affirmed the portion of the judgment allowing Nathan, as executor of the estate, to hire an attorney to represent him in his position as executor, and to pay for the services out of the proceeds of the succession. Lastly, the marital portion awarded to Audrey was affirmed.
[3] The trial court maintained Audrey's exception of prematurity to Gayle's motion to have her removed, and this Court denied Gayle's writ application (96-C-2355).
[4] In the Judgment, the trial court incorrectly referred to Ida's exception of no cause of action as that of Mr. Nathan. However, it is clear from the Reasons for Judgment that the court was aware of the proper parties.
[5] Gayle also objected to Mr. Nathan's attempt to have the liquidation case transferred and consolidated with the succession case. Upon writ application to this Court, it was decided that judicial economy dictated that the same judge hear both the succession case and the liquidation case because Abe's majority interest in the partnership is a major asset of the succession.
[6] Mr. Goodman explained that he spoke directly with Ida only after speaking with Mr. Nathan and Ida's attorney, and getting their agreement that he could do so in order to answer her questions.
[7] The two cases cited are Poche v. Bayliner Marine Corp., 632 So.2d 1170, 1175 (La.App. 5 Cir.1994), and Gitschlag v. U.S. Home Corp., 506 So.2d 1236, 1243 (La.App. 1 Cir.1987), both of which involve suits in redhibition, for which there is statutory authority to award attorney's fees. An award of attorney's fees is not allowed in Louisiana unless authorized by contract or statute. Brier Lake, Inc. v. Herbert S. Jones, 97-2413, p. 16 (La.4/14/98), 710 So.2d 1054, 1061. Further, an award of attorney's fees is considered to be penal in nature. See Cracco v. Barras, 520 So.2d 371, 372 (La.1988).
[8] The co-executors of Rose's estate, named defendants in Gayle's petition to liquidate the partnership, have filed a brief in support of Gayle's position that the partnership dissolved upon Abe's death.